501 So.2d 377 (1987)
GUARANTY NATIONAL INSURANCE COMPANY
v.
Adrienne E. Pittman.
No. 57322.
Supreme Court of Mississippi.
January 14, 1987.
*379 Jack F. Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, for appellant.
Everette Verhine, Vicksburg, Ben Todd, Memphis, for appellee.
Before ROBERTSON, ANDERSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal presents important questions regarding construction of several of our rules of civil procedure  those concerning the intervention of third parties in pending actions and the granting of default judgments and subsequent attacks thereon. The Circuit Court has entered judgment by default in favor of a personal injury plaintiff and against a truck driver defendant. The liability insurer for the truck driver's putative employer then sought to intervene and to have the default judgment vacated. The Circuit Court denied all relief.
For the reasons explained below, the liability insurer should have been allowed to intervene. Refusal to set the default judgment aside, however, was well within the Circuit Court's authority and in that respect the judgment below is affirmed.

II.
This action has its genesis in a September 29, 1983, motor vehicle accident in DeSoto County, Mississippi. Bobby Eugene Hardin, a driver for a Memphis trucking concern, was alone in his tractor when he was involved in an intersection collision with an automobile driven by Tracy Nichols and occupied by Adrienne E. Pittman. The collision caused serious personal injuries to Pittman who in due course asserted claims against both Nichols and Hardin, the latter of which we are primarily concerned with today.
Somewhat more than ten months following the accident, Pittman employed counsel, Everette Verhine, Esq. of Vicksburg, Mississippi, who on August 8, 1984, addressed a letter to Hardin advising of his representation, asserting a claim on Pittman's behalf against Hardin and suggesting that Hardin refer the matter to his liability insurance carrier. Hardin took the letter to Dave Steele, president of Central States Terminals, Inc., and in due course was advised that he was not covered by insurance through Central or its liability insurance company, The Hartford Accident and Indemnity Company.
On November 5, 1984, Pittman commenced the present civil action by filing her complaint in the Circuit Court of DeSoto County, Mississippi, naming Bobby Eugene Hardin as the defendant. Hardin was effectively served with process on November 12, 1984. The summons unequivocally advised Hardin that he must answer the complaint within thirty days. Hardin took the complaint to Steele who directed that he take it to Central's insurance agent in Memphis. This was done and apparently around December 27, 1984, Hardin was advised by the insurance agency that he had no coverage for claims made against him arising out of the incident in question.
In early January of 1985, Hardin talked on the telephone with Pittman's attorney, Everette Verhine. At that time Verhine advised Hardin that Pittman's suit against him had been set for trial on February 6, 1985, in the Circuit Court of DeSoto County and that, if Hardin had not answered nor appeared by that time, Pittman would take a default judgment against him. Under the circumstances Hardin knew or should have known of the hazards of failure to answer or appear.
On February 6, 1985, Pittman and her attorney appeared in the Circuit Court in Hernando, Mississippi. Hardin had filed no answer, nor did he appear in person or through counsel. Pittman then made application for entry of Hardin's default and *380 this was done by the clerk of the court. See Rule 55(a), Miss.R.Civ.P. Thereafter, Pittman applied for judgment upon Hardin's default which application was granted, subject to inquiry into Pittman's damages. See Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1097-98 n. 2 (Miss. 1985). A non-jury hearing was held the same day in the Circuit Court at the conclusion of which the Court assessed Pittman's damages as $400,000.00 and entered final judgment in that amount in favor of Pittman and against Hardin.
On or about February 26, 1985, today's Appellant, Guaranty National Insurance Company [GNIC], first learned of the pendency of this action and of the fact that judgment had on February 6, 1985, been entered against Hardin. GNIC is the liability insurance carrier for Rail Water Transport, Ltd., another Memphis based trucking concern under whose ICC permit it has been alleged that Hardin was operating at the time of the accident. On March 1, 1985, GNIC retained counsel to protect its interests. Following an apparent reservation of rights, GNIC employed counsel to represent Hardin in an effort to obtain vacation of the default judgment. In addition, GNIC has proceeded in its own behalf.
On May 10, 1985, Adrienne E. Pittman brought a garnishment action in the U.S. District Court for the Northern District of Mississippi against GNIC and other diverse defendants  Central, Hartford and Rail Water  seeking a judgment declaring that those defendants are liable to Pittman in the amount of $400,000.00 pursuant to various insurance contracts which allegedly covered Bobby Eugene Hardin. GNIC has answered that suit and has filed a counterclaim seeking a declaratory judgment as to whether Hardin was an insured under its contract with Rail Water and, if so, as to the amount of its liability.
Further, on May 13, 1985, Hardin filed suit in the same U.S. District Court seeking actual and punitive damages in the amount of $5,000,000.00 against Central, Rail Water, Hartford and GNIC based on an allegation of bad faith breach of insurance contract(s) by reason of failure to indemnify and defend.
Of more immediate relevance to today's appeal, on June 25 and 26, 1985, respectively, Bobby Eugene Hardin and GNIC filed motions in the present action, then pending in the Circuit Court of DeSoto County to have the February 6, 1985, default judgment set aside. Preliminarily, GNIC also filed a motion pursuant to Rule 24(a)(2), Miss.R.Civ.P., for leave to intervene in the Circuit Court suit for the limited purpose of seeking to have the default judgment set aside. By order dated January 10, 1986, the Circuit Court denied GNIC's motion for leave to intervene on the following grounds:
(1) untimeliness;
(2) the contingent nature of GNIC's interest in the suit;
(3) the fact that GNIC could not have been sued directly by Pittman; and
(4) adequacy of representation of GNIC's interest by Shelby Duke Goza, Esq., of Oxford, Mississippi, the attorney retained by GNIC to defend Bobby Hardin.
GNIC's motion to set aside the default judgment was also denied  although in a technical sense it was never before the court, for GNIC had been denied intervention. The Circuit Court then proceeded to deny Hardin's motion to set aside the default judgment.
GNIC perfected this appeal on February 4, 1986. Bobby Eugene Hardin failed to appeal the lower court's refusal to vacate the default judgment.

III.
There is no question of appealability here. Entry of an order in one of our trial courts denying an application for leave to intervene under Rule 24 is sufficiently a final order that review of same lies within our appellate jurisdiction. See Stallworth v. Monsanto, 558 F.2d 257, 263 (5th Cir.1977); United States Fidelity & Guaranty Company v. Adams, 485 So.2d 720, 721 (Ala. 1986). In any event, GNIC further *381 appeals entry of the final judgment in favor of Pittman and against Hardin.

IV.
GNIC first assigns error in the Circuit Court's order overruling its motion for leave to intervene. GNIC asserts here its claim of a right to intervene under Rule 24(a)(2), Miss.R.Civ.P., which provides as follows:
Upon timely application, anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. [Emphasis added]
This language is verbatim identical with that found in Rule 24(a)(2) of the Federal Rules of Civil Procedure by virtue of the 1966 amendments thereto. See 7C Wright, Miller & Kane, Federal Practice and Procedure § 1908 (2d ed. 1986); 3B Moore's Federal Practice § 24.07 (2d ed. 1985).
We are concerned with a claim of intervention of right. Rule 24(a)(2) provides that a would be intervenor "shall" be allowed to intervene if he meets four prerequisites: (1) he must make timely application, (2) he must have an interest in the subject matter of the action, (3) he must be so situated that disposition of the action may as a practical matter impair or impede his ability to protect his interest, and (4) his interest must not already be adequately represented by existing parties. Today's case is our first occasion to construe these requirements.[1]

A. Timeliness

GNIC filed its motion for leave to intervene on June 26, 1985. This was 140 days after entry of the default judgment in favor of Pittman and against Hardin back on February 6, 1985. The Circuit Court held that the motion was "not timely."
The concept of timeliness is not defined in Rule 24. The Comment, normally our most valued guide to proper construction of our rules of civil procedure, provides:
The requirement of timeliness is not of fixed meaning and provides an opportunity (even under 24(a)) for the court to take some account of the practical situation and the effect on those already parties and on the economical disposition of judicial business by allowing intervention. Rule 24(a) represents a judgment that in the situation there described justice demands that the interest of the absentee should predominate over the interests of the original parties and of trial convenience, but if the absentee has failed to move promptly to protect his interest he may find himself denied relief.
This, of course, tells us little we did not already know.
There is nothing per se offensive about post-judgment intervention. In other jurisdictions having a rule comparable to our Rule 24, post-judgment intervention has been allowed. Hodges, Grant & Kaufmann v. United States, 762 F.2d 1299, 1302 (5th Cir.1985); Lawrence v. Burke, 6 Ariz. App. 228, 431 P.2d 302, 310 (1967).
The United States Court of Appeals for the Fifth Circuit has fleshed out the concept of timeliness, identifying four factors that should be considered, weighed and balanced in determining whether a motion for leave to intervene is timely.[2] These factors *382 are (1) the length of time during which the would be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would be intervenor may suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. See Stallworth v. Monsanto Co. 558 F.2d 257, 264-66 (5th Cir.1977); Hodges, Grant & Kaufmann v. United States, 762 F.2d 1299, 1302-03 (5th Cir.1985); Walker v. Jim Dandy Company, 747 F.2d 1360, 1365-66 (11th Cir.1984).
We accept the Fifth Circuit's approach to timeliness, add-only for clarification that likelihood of success on the merits of the claim in intervention is not a factor which should be considered in determining whether a motion for leave to intervene is timely or should otherwise be granted, except only in the limited sense that the complaint in intervention should state a claim upon which relief may be granted. See Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 505 (Miss. 1985). GNIC's motion to set aside default judgment, which we take to be its pleading within Rule 24(c), clearly passes this threshold test.
Applying the timeliness factors, the record reflects that GNIC first learned of the present civil action on February 27 or 28, 1985, some three weeks after entry of the default judgment against Hardin. The fact that GNIC or one of its agents may have known of the pre-suit assertion of the Pittman claim at an earlier date is of no consequence. What matters is when they learned that the lawsuit had been filed. The record establishes without contradiction that GNIC first learned of this lawsuit  and therefore of its interest in the lawsuit  on February 27. GNIC's motion for leave to intervene was filed some 119 days later on June 26, 1985. Such a delay in the ordinary case is hardly inordinate. This is particularly so in view of the fact that GNIC's avowed purpose in seeking intervention was to file a motion to vacate default judgment under Rule 60(b), Miss.R. Civ.P., a motion which may be filed at any time within six months after entry of the judgment sought to be set aside.
Prejudice to existing parties would ordinarily, in a Rule 24 context, consist of delaying them in the prosecution of claims or defenses in the pending action. It is measured as of the date of the filing of the motion for leave to intervene. Here no such prejudice may be shown for the reason that one day earlier, on June 25, 1985, Hardin filed a similarly worded motion to vacate the default judgment. Any delay other parties may have experienced from allowing GNIC to intervene was going to be experienced anyway as a result of the Hardin motion. GNIC's motion for leave to intervene did not introduce into the case any new claim or require any new litigation beyond that already before the court by virtue of Hardin's motion filed the previous day.
More precisely, we are concerned with the possibility of substantial prejudice resulting from the failure of the would be intervenor to file as soon as he learned of the action; that is, are existing parties subjected to any substantial prejudice resulting from GNIC's moving to intervene on June 26 rather than back on February 27 when it first learned of the action? None has been identified and none is apparent to us. Stallworth v. Monsanto Company, 558 F.2d 257, 267 (5th Cir.1977).
The extent of prejudice to the would be intervenor, should intervention be denied, *383 is likewise measured at the time the application for leave to intervene is made. Here GNIC sought to intervene for the purpose of seeking to have the default judgment against Hardin vacated. Entry of final judgment in favor of Pittman and against Hardin, quite obviously, is a major step on Pittman's part toward exaction of a substantial sum of money from GNIC. While it is not at all clear to us that GNIC will be finally bound by any such judgment,[3] we do regard it as quite apparent  as of June 26, 1985  that as a practical matter GNIC's interest would be prejudiced substantially if the judgment against Hardin remained final. In that sense, the potential for prejudice to GNIC was sufficiently great at the time the motion for leave to intervene was filed so that the motion should have been granted.
Finally, the only unusual circumstance militating either for or against a determination of timeliness is that the motion for leave to intervene was made after the entry of judgment. In the case at bar, however, this hardly cuts against allowing intervention, for the dual reasons that the potential for prejudice to GNIC's interest was not nearly so great before entry of judgment and, furthermore, because GNIC did not know of the pendency of the action until after the judgment had been entered.
For these reasons, we hold that the GNIC met the first of the four requisites for intervenor-of-right status under Rule 24(a)(2) The Circuit Court abused its discretion when it held GNIC s motion for leave to intervene untimely.

B. GNIC's Interest In The Subject Matter Of The Pending Action

One claiming intervention of right must also show that he has "an interest relating to the property or transaction which is the subject of the action." Rule 24(a)(2), Miss. R.Civ.P. GNIC claims that it has such an interest in that it has written a liability insurance policy covering Rail Water and that failure to disturb the default judgment against Hardin will move Guaranty a major step toward having to pay that judgment. This is said to be so in the context of Pittman's allegation that at the time of the accident in question Hardin was operating under Rail Water's ICC permit. The Circuit Court, however, found GNIC's interest inadequate and stated:
This court is still uncertain as to what interest GNIC claims relating to the subject matter of this suit. It certainly does not admit coverage, in any shape, form or fashion. Additionally, this court is satisfied, notwithstanding the coverage issue, that since GNIC could not have been sued directly in this cause, it could not have been allowed in intervene in any pre-judgment proceedings; therefore, this court finds no compelling reason to now allow GNIC to intervene in any post-judgment proceedings.
In the life of Rule 24 intervention both in the place of its birth, the federal court system, and subsequently in the courts of states which have adopted the rule, insurers from time to time have sought leave to intervene in litigation against their putative insureds. Several early federal cases appear to have allowed such intervention. Knapp v. Hankins, 106 F. Supp. 43 (E.D.Ill. 1952); United States v. C.M. Lane Lifeboat Co., 25 F. Supp. 410, 411 (E.D.N.Y. 1938), aff'd. 118 F.2d 793 (2d Cir.1941). More recently, however, some courts have labeled such insurer interests "contingent" and have held those interests insufficient to meet the interest requirement of Rule 24(a)(2).[4]See, e.g., Restor-A-Dent *384 Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874-76 (2d Cir.1984); United States Fidelity & Guaranty Co. v. Adams, 485 So.2d 720, 721-22 (Ala. 1986); Donna C v. Kalamaras, 485 A.2d 222, 223-24 (Me. 1984); 3B Moore's Federal Practice § 24.07[2], pp. 24-59 (2d ed. 1985); but see Su Duk Kim v. H.V. Corporation, 688 P.2d 1158, 1161 (Hawaii App. 1984); and Lawrence v. Burke, 6 Ariz. App. 228, 431 P.2d 302, 310 (1967). The question is one of first impression in this state, one we face without clear guidance from the federal judiciary or our sister states. Indeed, the Supreme Court's most recent signals  two decades ago  are quite conflicting. Contrast Cascade Natural Gas Corporation v. El Paso Natural Gas Company, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) with Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).
The wording of Rule 24, in our view, calls for an interpretation based in common sense and practicality. Legalistic formalism and mechanical jurisprudence simply do not fit the language or philosophy of the rule. All that is necessary is that GNIC establish an interest in the rights that are at issue in the litigation. Hartford Accident and Indemnity Company v. Crider, 58 F.R.D. 15, 18 (N.D.Ill. 1973). GNIC has written a liability insurance policy by virtue of which it may be called upon to pay Pittman's damages. Back on June 26, 1986  as today  whether the Pittman judgment against Hardin stood made quite a difference to GNIC. This gave GNIC an interest in the transaction which is the subject matter of the pending action adequate to the requirements of Rule 24(a)(2).

C. Practical Disadvantage To GNIC If Intervention Is Not Allowed

By construction we hold the interest test of Rule 24(a)(2) a practical one, broader than such legalistic notions that the judgment in the first action must affect the would be intervenor under such doctrines as res judicata, collateral estoppel or even stare decisis. The third requisite for intervention of right under Rule 24(a)(2) expressly adopts the idea of practicality, to-wit: the intervenor must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect ... [his] interest." This requisite is difficult to separate from the "interest" requirement and, indeed, the two are often discussed and considered as one, see, e.g., 7C Wright, Miller & Kane Federal Practice & Procedure § 1908 (2d ed. 1986).
It may be argued that GNIC can protect its interests by vigorous litigation in the federal actions. Other jurisdictions with a Rule 24(a)(2) like ours, however, have held that the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene. Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co., 600 F.2d 671, 681 (7th Cir.1979); Clark v. Sandusky, 205 F.2d 915, 919 (7th Cir.1953).
The central purpose of this requisite is to allow intervention by those who might, in a practical sense, be disadvantaged by the disposition of the action. The rule is satisfied whenever disposition of the present action would put the would be intervenor at a practical disadvantage in protecting his interest. See Corby Recreation, Inc. v. General Electric Co., 581 F.2d 175, 177 (8th Cir.1978); Atlantis Development Corporation v. United States, 379 F.2d 818, 825 (5th Cir.1967).
Here the practical disadvantage to GNIC, as of June 26, 1985, was clear. Before Pittman may recover from GNIC, she must establish Hardin's liability. In order to establish that liability, she must show Hardin negligent and obtain a judgment against him. The record before us suggests that on the merits Hardin may well have had a defense in that the primary negligence appearing to have caused the accident was that of Pittman's driver, Tracy Nichols, and not any negligence of Hardin. *385 If in this setting the judgment against Hardin remains final, GNIC would be put at a practical disadvantage in protecting its interest. As such this third requisite for intervention of right under Rule 24(a)(2) has been met.

D. Adequacy Of Representation By Existing Parties

Finally, Rule 24(a)(2) requires that GNIC establish that its interest in this matter is not "adequately represented by existing parties." The Circuit Court ruled against GNIC on this point as well, finding that its interest was adequately represented by Hardin and his counsel of record. Again, the Circuit Court was in error.
It may be true that Hardin also was seeking to set aside the default judgment. In this technical sense the legal interests of GNIC and Hardin were similar. Rule 24, however, as indicated above, mandates sensitivity to practical considerations. The almost certain inability of Hardin to pay a $400,000.00 judgment or any substantial portion thereof  back on June 26, 1985  rendered it highly unlikely that his protection of the common interest of GNIC and himself would be with the same vigor as has been brought to the matter by GNIC, which we assume is quite solvent.
Moreover, the record reflects that prior to intervention  on May 13, 1985, to be specific  Hardin had commenced a civil action in the United States District Court for the Northern District of Mississippi against GNIC, among others, presenting all sorts of real and imagined claims and demanding no less than $5,000,000.00 in actual and punitive damages. That action arises out of GNIC's handling of the case at bar. Its pendency ipso facto suggested, again as a practical matter, a substantial conflict of interest between GNIC and Hardin to the point that GNIC should not be required to rely upon Hardin to protect its interest. The inadequacy of Hardin's representation in the matter is confirmed by the fact that Hardin has taken no appeal from the Circuit Court's order denying the two motions for leave to vacate and set aside the default judgment.
The fact that GNIC, under its duty to defend and with full reservation of rights, had engaged counsel, Shelby Duke Goza, Esq., to represent Hardin in no way suggests that intervention should be denied on the adequacy of representation issue. Insurer employed counsel have an absolute and uncompromisable ethical duty to protect the insureds, the Bobby Eugene Hardins, they are engaged to represent. Goza was ethically bound to proceed in Hardin's interest, and in Hardin's interest alone, not only when but particularly when that interest might require that he displease GNIC, all of this notwithstanding that GNIC may have been obligated to pay Goza's fee.

E. Summary Considerations

In the final analysis we consider our task as arbiters of the practice of intervention of right under Rule 24(a)(2) as "not to require an elaborate legal minuet in the courts below, but to support the efforts of those courts to insure that litigation moves sensibly and purposefully forward." Martin v. Travelers Indemnity Company, 450 F.2d 542, 554 (5th Cir.1971). Again, whether the putative intervenor is likely to prevail on the merits is not a part of the calculus in which the trial court should engage in considering such an application.
We think there is much to be said for an overall attitude which gives the benefit of the doubt to the one seeking intervention, particularly where intervention of right under Rule 24(a)(2) is claimed. Corby Recreation, Inc. v. General Electric Company, 581 F.2d 175, 177 (8th Cir.1978). This attitude is expressed in the Comment to Rule 24 which describes the rule as "represent[ing] a judgment that ... justice demands that the interest of the absentee [intervenor] should predominate over the interests of the absentee parties and of trial convenience." See Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.1978); Fidelity Bankers Life Ins. Co. v. Wedco, 102 F.R.D. 41, 43 (D.Nev. 1984).
Two considerations dictate this approach. First, whether as a practical matter one *386 has an interest that may be impaired or jeopardized is a matter no court will ever be able to determine as well as the intervenor himself. The court will never understand the facts as well as the intervenor, nor, because its neck is not on the line, may a court be expected to appreciate the impact of refusing intervention.
On the other hand, liberal intervention may be denied an adverse impact on the remainder of the litigation by the court's inherent power to control the intervenor's participation in the action. Reikes v. Martin, 471 So.2d 385, 391 n. 2 (Miss. 1985). Of course, the court's ultimate weapon in this regard is the power to sever the intervenor's claims for pretrial or trial proceedings. See Rule 42(b), Miss.R.Civ.P.
Without further ado, we hold that the Circuit Court erred when on January 10, 1986, it overruled and denied GNIC's motion for leave to intervene.

V.

A.
That GNIC should have been allowed to intervene does not necessarily determine the second issue on this appeal: whether the default judgment should be vacated. In the first place, GNIC's rights are derivative. GNIC has the right to make the argument that the judgment against Harden should be vacated, but the argument it may make is that available to Hardin. GNIC has no independent rights in the premises, over and above those of Hardin, which though Hardin fail might entitle it to vacation of the default.
Further, the record reflects that the Hardin case for vacation of the default was fully presented. GNIC was present and, though not formally a party, had a practical impact on the full presentation of the reasons why Pittman should be stripped of her judgment. GNIC has made no suggestion here that there were additional points, factual or legal, that may have been presented had its motion for leave to intervene been granted. For present purposes, equity and practicality mandate that we treat the remainder of this appeal as though GNIC had been allowed to intervene, its motion to vacate default judgment denied, with review of that denial the matter at hand.[5] In practical effect, GNIC now prosecutes the appeal Hardin failed to perfect.

B.
On November 12, 1984, Hardin was served with a summons which advised him in no uncertain terms that he must answer within thirty days or suffer default. The operative language of the summons is as follows:
NOTICE TO DEFENDANT
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. You are required to mail or hand-deliver a copy of a written Answer either admitting or denying each allegation in the Complaint to EVERETTE VERHINE, P.A., the attorney for the Plaintiff(s), whose address is 1017 Jackson St., P.O. Box 173, Vicksburg, MS 39180.
THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.
Assuming that Hardin could count to thirty and had some rudimentary familiarity with the Julian calendar, the summons instructed him that his answer was due on December *387 12, 1984. That date came and passed and, insofar as the record reflects, Hardin did nothing. Indeed, the next entry in the record is Pittman's application for default filed February 6, 1985. Prior to that time Hardin had neither filed nor served an answer nor otherwise made an appearance in the action.
The record reflects, and the Circuit Court found, that Hardin had the name and address of Pittman's attorney as early as August 8, 1984, for on that date Hardin received a letter from Pittman's attorney advising of his representation and requesting that Hardin turn the matter over to his liability insurance company. The record reflects, and the Circuit Court found as a fact, that on January 12, 1985, Hardin telephoned Pittman's attorney regarding the case and the attorney advised Hardin to get a lawyer to defend himself. More specifically, Pittman's attorney advised Hardin that the case would be set down for February 6, 1985, and if Hardin did not appear, a default judgment would be taken against him.
True to his word, Pittman's counsel appeared in the Circuit Court of DeSoto County  some 86 days post service of process  made application to the clerk for entry of default and filed in support an affidavit requisite under Rule 55(a), Miss.R. Civ.P., obtained the clerk's entry of default and judgment thereon followed by a non-jury hearing on damages, see Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1097-98 n. 2 (Miss. 1985), resulting in a final judgment in favor of Pittman and against Hardin in the sum of $400,000.00, plus interest and costs.
The matter at hand is governed by several provisions of the Mississippi Rules of Civil Procedure. To begin with, Rule 12(a), Miss.R.Civ.P., provides:
A defendant shall serve his answer within thirty (30) days after the service of the summons and complaint upon him... .
By virtue of this rule, Hardin was obligated to serve his answer on December 12, 1984, and the summons served upon him advised him of this fact.
Rule 55(a), Miss.R.Civ.P., provides:
When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
Hardin is one against whom a judgment for affirmative relief was sought within the meaning of Rule 55(a). Hardin had failed to plead or otherwise defend as required by Rule 12(a). That fact was made to appear by affidavit of Pittman's attorney. The clerk correctly entered Hardin's default.
Rule 55(b), Miss.R.Civ.P., provides that judgment may be entered upon a party's default only upon application to the court. The record reflects that Pittman made proper application within the rule. Because Hardin had entered no appearance, the three day waiting period provided in Rule 55(b) was unnecessary. The record further reflects that the court inquired into the matter of damages and in the end entered the $400,000.00 judgment in conformity with Rule 55(b).
On this appeal, we do not understand GNIC to question in any way the propriety of the Circuit Court's having entered judgment in favor of Pittman and against Hardin. Rather, the charge on this appeal is that the Circuit Court erred in refusing to set aside the judgment. Here two rules must be considered. Rule 55(c) authorizes the trial court to vacate a judgment entered by default "for good cause shown." Rule 60(b), Miss.R.Civ.P., provides that, within six months of the judgment under consideration, and upon motion and such terms as are just,
the court may relieve a party ... from a final judgment ... [if] (5) ... it is no longer equitable that the judgment should have prospective application; [and] (6) any other reason justifying relief from the judgment.
To be sure, default judgments are not favored and trial courts should not be grudging in the granting of orders vacating *388 such judgment where showings within the rules have arguably been made. Bell v. City of Bay St. Louis, 467 So.2d 657, 666 (Miss. 1985). Yet seldom may it be said that a party seeking relief from a default judgment is entitled to that relief as a matter of right. Rather, an application for vacation of such a judgment is addressed to the sound discretion of the trial court. Bryant, Inc. v. Walters, 493 So.2d 933, 936-37 (Miss. 1986). That discretion must be exercised in accordance with the provisions of Rules 55(c) and 60(b) as well as the supplementary criteria given validity in the decisions of this Court. So measured, the trial court's exercise of its discretion may be disturbed only where it has been abused.
Ascertaining the meaning of the provisions of Rule 55(c) and Rule 60(b)(5) and (6) with any degree of precision simply may not be done for the language is hopelessly open textured. A consideration of the criteria of those rules together boils down almost to a balancing of the equities  in whose favor do they preponderate, the plaintiff or the defendant?
On the one hand, we find the only excuse offered for Hardin's failure to answer timely is the repeated assertion of "great confusion" or "mass confusion." On close examination, however, the excuse appears quite lame. Any confusion appears attributable to Central States Terminals and Rail Water Transport, their insurers and agents. Nothing in the record suggests that Hardin was confused about the meaning and effect of the papers served upon him. He may have been confused about whether he had insurance coverage, but not about the fact that he had been sued and should respond. From his testimony at the hearing below, we know that Hardin understood the import of the summons and complaint when he received them and that he made repeated efforts to get his employer and its insurer to do something. Assuming arguendo that Hardin may not fully have appreciated his predicament at first, his January 12, 1985, telephone conversation with Pittman's attorney provided him unequivocal information that he must appear and answer by February 6, 1985, or suffer default. There is no basis in the record for a conclusion of any other understanding on the part of Hardin regarding his predicament leading up to February 6, 1985. The Circuit Court's implied conclusion that Hardin had no bona fide excuse for his failure to answer timely was well within the evidence. International Paper Co. v. Basila, 460 So.2d 1202, 1204 (Miss. 1984).
To be sure, Hardin made a substantial showing at the hearing below that he did in fact have a colorable defense on the merits of Pittman's claim. This is a factor which should often be sufficient to justify vacation of a judgment entered by default. Bryant, Inc. v. Walters, 493 So.2d 933, 937 (Miss. 1986); International Paper Co. v. Basila, 460 So.2d 1202, 1204 (Miss. 1984). On the other hand, Plaintiff Pittman may well have suffered substantial prejudice from the granting of the motion to vacate. That motion was not filed until June 25, 1985, and the Circuit Court was not able to rule thereon until January 10, 1986. Even if the judgment had been vacated at that time and Pittman given the earliest possible trial setting, the trial would still have occurred more than one year following the original February 6, 1985, setting. It requires no great insight to know that a year's postponement of a trial which will turn on witnesses' memories regarding a split second event  a motor vehicle accident  will often substantially prejudice one or both of the parties in terms of the common human phenomenon of loss of memory of specific events over time, not to mention the fact that the injured plaintiff is without a resolution to her claim for that period of time.
In the final analysis, this case presents the questions whether we accord any meaning to a defendant's Rule 12(a) duty to answer a final judgment entered after the defendant had been fully advised of his peril. It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate a policy of entering irrevocable *389 defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave. That point had been reached in the case at bar on February 6, 1985.
In these circumstances, refusal to set aside the default judgment was well within the Circuit Court's authority. We may not fairly conclude that the Circuit Court exceeded its authority or abused its discretion in the premises. Indeed, when the interests of Pittman and Hardin are balanced in the above described context, we are of the view that it would be quite inequitable to Pittman to deny her judgment any future force or effect. See Rule 60(b)(5), Miss.R. Civ.P. The order denying the motion to vacate default judgment is affirmed.
ORDER DENYING MOTION FOR LEAVE TO INTERVENE REVERSED AND RENDERED; ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents without opinion on matter of intervention, otherwise, concurs in result.
NOTES
[1] Rule 24(a)(2) is entitled "Intervention of Right" and includes the mandatory "shall," thus giving the impression that the trial court has little, if any, discretion in the matter. Candor requires recognition that the four tests stated above each in and of itself contains language sufficiently open textured that not inconsiderable discretion is as a practical matter vested in the trial court. To be sure, if the four requisites are found met, the applicant must be allowed to intervene. The wording of the four requisites, however, is such that the trial court is of necessity required to exercise discretion in judgment for none is stated with mathematical precision.
[2] Here, as elsewhere, we find useful the guidance of the federal judiciary in the construction of our rule which has an identical federal counterpart. See Bryant, Inc. v. Walters, 493 So.2d 933, 935-36 (Miss. 1986); Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984); Brown v. Credit Center, Inc., 444 So.2d 358, 364 n. 1 (Miss. 1983).
[3] Coverage questions respecting notice to the insurer of the pendency of this suit, similar to those we considered in Leader National Insurance Company v. Lindsey, 477 So.2d 1323 (Miss. 1985), are likely to be before the U.S. District Court in the garnishment action filed by Pittman on May 10, 1985. See page 3 above. Such questions are not before this Court this day and nothing said in this opinion should be taken as our expression how those questions should be decided.
[4] Ironically, the broader federal constructions of "interest" appear in pre-1966 amendment cases. It is generally considered that the 1966 amendments to Rule 24 provided for more liberal access to the intervention process than had existed theretofore. See, e.g., Steinberg v. Shearson Hayden Stone, Inc., 598 F. Supp. 273, 280 (D.Del. 1984).
[5] The record contains a brief order entered by the Circuit Court on January 10, 1986, denying GNIC's motion to vacate default judgment. Technically, this order should not have been entered in that intervention was denied.