# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00759-SCT

*JACK HAYES AND GEORGE S. WHITTEN, SR.*

*v.*

*LEFLORE COUNTY BOARD OF SUPERVISORS*

## ON MOTION FOR REHEARING
## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2003 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE S. WHITTEN, JR. |
| ATTORNEY FOR APPELLEE: | WILLIE JAMES PERKINS, SR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND RENDERED. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED - 08/17/2006 |
| MOTION FOR REHEARING FILED: | 05/11/2006 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn, and this opinion

is substituted therefor.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 14, 1995, an order was entered into the minute books of the Leflore County Board of Supervisors ("Board").[1] This order reflected that all five members of the Board agreed to authorize the exchange of lands between Leflore County ("County") and two companies, Gold Kist and Scott Petroleum. The order also included incentives from the County, including the construction of a rail spur track, easements, and an ad valorem tax exemption. Phil Wolfe, a member of the Board, claimed the Board neither considered, discussed, nor approved the 1995 order. On April 17, 1998, he filed a petition for injunctive relief in the Leflore County Chancery Court against the Board and County under the Open Meetings Act, Mississippi Code Annotated Section 25-41-1, et seq. (Rev. 2003) ("Open Meetings Suit"). Wolfe requested the chancellor purge the order from the minute books and enjoin the enforcement of the order, or in the alternative, remove his name from the recorded vote. Gold Kist filed an answer and cross petition in June 1998, as did Scott Petroleum.

¶3. While Wolfe's case was pending, Southern States Cooperative ("Southern") purchased the land obtained by Gold Kist in the 1995 order. Because Wolfe's suit was a cloud on Southern's title to the land, Southern filed suit in late 2002 to quiet and confirm title, naming Wolfe as a defendant ("Quiet Title Suit"). On March 7, 2003, in an agreed order entered in Southern's suit, Wolfe agreed to dismiss any claims pending in his Open Meetings Suit against the Board and County. In exchange, Wolfe would be released from Southern's Quiet Title Suit.

---

[1] The facts are taken from those provided by the Mississippi Court of Appeals in *Hayes v. Leflore County Bd. of Supervisors*, 2005 WL 1870252, at *1 (Miss. Ct. App. Aug. 9, 2005) (hereinafter "*Hayes*").

¶4. After learning that Wolfe was dismissing his suit, Harold Emerson, Jack Hayes, and George S. Whitten, Sr. (collectively "Hayes"), filed a motion on March 21, 2003, to intervene in Wolfe's Open Meetings Suit under Mississippi Rule of Civil Procedure 24(a)(2). Like Wolfe, Hayes alleged the 1995 order was not an action taken by the Board. Hayes requested an injunction commanding the Board to purge the 1995 order from its minutes or a decree that would strike the 1995 order from the Board's minutes.

¶5. On May 5, 2003, the chancellor entered an order dismissing Wolfe's Open Meetings Suit with prejudice. When Hayes challenged the dismissal in a motion for relief, the chancellor pointed to the March 7, 2003, order in Southern's Quiet Title Suit wherein Wolfe had agreed to dismiss his Open Meetings Suit. The chancellor ruled that Hayes had no basis for a Rule 24(a)(2) motion to intervene because Wolfe already had agreed to dismiss his Open Meetings Suit on March 7, 2003.

¶6. Hayes appealed, and in a 7-0 vote, the Court of Appeals reversed, finding Hayes's motion to intervene was timely and that Hayes should have been allowed to intervene. *Hayes*, 2005 WL 1870252, at *3. The Court of Appeals based its decision on the fact that although Wolfe signed March 2003 order in the Quiet Title Suit, there was no record of dismissal filed in the Open Meetings Suit until May 2003. *Id*. Leflore County filed a Petition for Writ of Certiorari to this Court, which we granted. We disagree with the Court of Appeals' finding that Hayes filed his motion to intervene before the Open Meetings Suit was dismissed. For the reasons set forth below, we reverse the Court of Appeals' judgment and reinstate and affirm the chancellor's decision to dismiss Hayes's petition.

**STANDARD OF REVIEW**

¶7.    "[A] trial court has considerable discretion in ruling on a motion to intervene." *City of Tupelo v. Martin*, 747 So. 2d 822, 826 (Miss. 1999) (citing *Cummings v. Benderman*, 681 So. 2d 97, 101 (Miss. 1996); *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 381 n.1 (Miss. 1987)). "The standard of review of a chancellor's denial of a motion to intervene is abuse of discretion." *Cohen v. Cohen*, 748 So. 2d 91, 93 (Miss. 1999) (citing *Perry County v. Ferguson*, 618 So. 2d 1270, 1271-72 (Miss. 1993)).

## DISCUSSION

¶8.    One of many issues on appeal is whether Wolfe's Open Meetings Suit closed so as to prevent Hayes from intervening under Rule 24(a)(2). Stated differently, the preliminary issue is whether the chancellor's March 7, 2003, order, which was entered in the Quiet Title Suit, was sufficient to dispose of the Open Meetings Suit. The County asserts, and the chancellor agreed, that Hayes has no basis for a Rule 24(a)(2) motion to intervene because Wolfe already had agreed to dismiss his suit on March 7, 2003, in an agreed order in Southern's Quiet Title Suit. Hayes disagrees, asserting several theories which this Court will address in turn.

¶9.    Under Mississippi Rule of Civil Procedure 41(a), a dismissal may be accomplished by notice, stipulation, or court order. However, Hayes argues that the agreed order entered in the Quiet Title Suit was not effective to dismiss the Open Meetings Suit. Hayes argues Mississippi Rules of Civil Procedure 58 and 79(a) exclude the chancellor's reasoning to deny Hayes's motion to intervene; namely, that an agreed order (containing an agreement to dismiss a separate suit) which is entered on the docket in one suit does not operate to dismiss the separate suit.

4

¶10. Rule 58 requires "[e]very judgment shall be set forth on a separate document which bears the title of 'Judgment.'" Rule 58 also states "[a] judgment shall be effective only when entered as provided in M.R.C.P. 79(a)." Rule 79(a) requires the court clerk to maintain a general docket: "The clerk shall keep a book known as the "general docket" of such form and style as is required by law and shall enter therein each civil action to which these rules are made applicable."

¶11. Although Hayes cites to Rules 58 and 79(a) in support of his argument, we disagree with Hayes's contention that a notice of dismissal, stipulation of dismissal, or order of dismissal must be entered on the docket so as to effect a dismissal for purposes of a Rule 24(a)(2) intervention. The comment to Rule 58 states, "[t]he purpose of Rule 58 is simply to provide a precise *post-trial date* from which periods of time may be computed. . . . The times for taking *post-trial* action are computed from the date judgment is entered . . . ." (emphasis added). While Rule 58 is important for establishing a date for computing post-trial motions and appeals, we do not interpret the rule to be the only means by which to effect a dismissal, especially where the parties have stipulated to dismiss a separate case, even though the stipulation is located in an order entered in a separate suit. Based on the facts of this case, we focus on the agreement between the parties as formalized in the March 7, 2003, order in the Quiet Title Suit, as opposed to whether a motion had been filed or an order entered in the Open Meetings Case. We find the March 7, 2003, order in the Quiet Title Suit, wherein Wolfe agreed to dismiss his suit against the Board, sufficiently disposed of the Open Meetings Suit for purposes of a Rule 24(a)(2) motion to intervene. The matter being litigated was resolved, which left nothing into which Hayes could intervene.

5

¶12.    Next, Hayes cites ***Elliot v. Harrigill***, 133 So. 2d 612, 614 (Miss. 1961), where this Court held where two or more cases are consolidated, the consolidation does not make parties to one case parties to the other and *separate* decrees should be entered, unless the nature of the matters be such that it is clearly proper to include both in one decree. In ***Elliot***, a holder of a note sued the note's endorsers, and also filed a separate suit against the maker. ***Id***. at 613. However, while the suits were later consolidated, a *single* decree was entered. ***Id***.

¶13.    Hayes also cites the comment to Mississippi Rules of Civil Procedure 42(a) for the proposition that "equity cases preserve identity of the causes, pleadings are carried on as if no consolidation had arisen, and separate decrees are issued." (citing V. Griffith, Mississippi Chancery Practice, § 506 (2d ed. 1950)). Hayes concludes that since this is the rule for most consolidated cases, it was far greater error for the chancellor to treat the March 2003 order in the Quiet Title Suit as controlling in the Open Meetings Suit, since those two cases were not consolidated.

¶14.    However, Hayes fails to recognize the exception provided in ***Elliot***, that separate decrees are required in consolidated cases "*unless* the nature of the matters be such that it is clearly proper to include them in one decree." ***Id***. at 614. Moreover, nothing in either ***Elliot*** or the comment to Rule 42 suggests the chancellor was forbidden from entering an order in the Quiet Title Suit to dispose of litigation involved in the Open Meetings Suit.

¶15.    Hayes also argues the Open Meetings Suit had not concluded, based on several events that unfolded after the March 7, 2003, order. These include Wolfe's May 12, 2003, motion to dismiss himself as a party in the Open Meetings Suit (as required by the March 7, 2003,

6

order in the Quiet Title Suit); an order of dismissal of Scott Petroleum[2] signed by the chancellor in April 2003;[3] and an order of dismissal presented by the board attorney and signed by the chancellor in May 2003 in the Open Meetings Suit. Again, in addition to the rationale set forth above, we find the subsequent motions filed in the Open Meetings Suit as required by the March 7, 2003, order, were simply formalities to a forgone conclusion.

¶16.   Hayes argues that based on *Martin v. Wilks*, 490 U.S. 755, 762 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989) (superseded by statute as recognized in *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005) in the context of employment discrimination), that while an agreed order among parties to a lawsuit resolves the issues among them, it does not conclude the rights of strangers to the proceeding. As such, Hayes asserts he should be allowed to intervene.

¶17.   In *Wilks*, a group of white firefighters filed suit claiming they were being denied promotions in favor of less qualified black firefighters. *Wilks*, 490 U.S. at 760. The white

---

[2] Although Wolfe's first application for injunctive relief is not included in the record, it appears Scott Petroleum was listed as a defendant in the Open Meeting Suit, as Scott filed an answer along with a cross complaint requesting the court to compel the Board to fulfill all legal obligations as listed in the 1995 order.

[3] Hayes argues that because Scott Petroleum had filed a cross claim as part of its answer, Wolfe's Open Meetings Suit remained "open" because as a plaintiff, Scott Petroleum did not dismiss its claim until after Hayes filed his motion to intervene. Hayes cites the chancellor's order denying Hayes' intervention, where the chancellor stated Wolfe "was the only Plaintiff in this matter." We disagree with Scott's assertion. Even though Scott Petroleum may have been a plaintiff for purposes of its cross claim, Scott Petroleum's interest was for the Board to fulfill its interests, namely the obligations listed in the 1995 order, not the interests which Hayes sought: an injunction commanding the Board to purge the 1995 order from its minutes or a decree that would strike the 1995 order from the Board's minutes.

firefighters argued the City of Birmingham and the county's personnel board were making promotion decisions based on race in reliance on certain consent decrees. *Id*. The consent decrees were the result of a former suit initiated by black firefighters against the City of Birmingham. *Id*. at 759. After trial, the district court granted the City's motion to dismiss, holding the plaintiffs were precluded from challenging the employment decisions made pursuant to the consent decrees, even though the plaintiffs had not been parties to the proceedings in which the consent decrees had been entered. *Id.* at 755. The Eleventh Circuit reversed, holding that because the plaintiffs "'were neither parties nor privies to the consent decrees, . . . their independent claims of unlawful discrimination are not precluded.'" (quoting *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492, 1498 (11th 1987)).

¶18. On certiorari to the United States Supreme Court, the defendants argued the plaintiffs were aware that the original suit (from which the consent decree was entered) might affect them, and because they chose not to intervene, the plaintiffs should not be permitted to later litigate the racial discrimination issue in a new action. *Wilks*, 490 U.S. at 762. The Supreme Court disagreed, stating "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."

¶19. The *Wilks* decision has no bearing on this case. In *Wilks*, the issue was not whether the plaintiffs could intervene in a proceeding already before the court, but instead whether a plaintiff was bound by a decision in a prior proceeding where the plaintiff chose not to intervene. Here, the issue is whether Hayes may intervene in a proceeding that is no longer ongoing. Again, Hayes seeks an injunction commanding the Board to purge the 1995 order

8

from its minutes or a decree that would strike the 1995 order from the Board's minutes. While we find the *Wilks* case has no bearing on Hayes' right to intervene, the decision here does not "conclude the rights" of Hayes to seek the same or similar relief. Stated differently, we are not precluding Hayes from filing his own suit seeking an injunction or a decree to purge or strike the 1995 order.[4]

¶20.   Finally, Hayes alternatively argues that even if the March 7, 2003, order in the Quiet Title Suit served to close the Open Meetings Act, intervention is still permissible after final judgment pursuant to *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 337 (Miss. 1987) and Mississippi Rule of Appellate Procedure 4(i).

¶21.   In *Pittman*, the trial court entered a default judgment in favor of the plaintiff. *Pittman*, 501 So. 2d at 380.   Approximately 140 days after the entry of judgment, the liability insurer for the defendant's putative employer filed a motion to intervene and have the default judgment vacated. *Id*. at 381.   The trial court denied the liability insurer's motion. *Id*.   On appeal, this Court reversed, finding the liability insurer's intervention was proper under the four requisites listed in Rule 24(a)(2). *Id*. at 386.

¶22.   However, *Pittman* is distinguishable from this case.   In *Pittman*, the liability insurer's purpose in seeking intervention was to file a motion under Mississippi Rules of Civil Procedure 60(b), which may be filed at any time within six months after entry of a judgment. *Id*. at 382.   Moreover, the defendant had similarly filed a motion to vacate the judgment. *Id*. This Court stated:

---

[4] However, as that issue is not before us, we will not discuss the merits of such a claim.

> Any delay other parties may have experienced from allowing [the liability insurer] to intervene was going to be experienced anyway as a result of the [defendant's] motion. [The liability insurer's] motion for leave to intervene did not introduce into the case any new claim or require any new litigation beyond that already before the court by virtue of [defendant's] motion filed the previous day.

*Id*.

¶23.    Hayes also argues M.R.A.P. 4(i) authorizes post-judgment intervention.   The rule states:

> If the board of supervisors of any county . . . sued in official capacity, fails to file a notice of appeal under Rule 4(a) within 20 days after the date of entry of an adverse judgment or order, or within 7 days after filing of a notice by another party pursuant to Rule 4(c), any taxpayer of the county . . . shall have the right at the taxpayer's own expense to employ private counsel to prosecute the appeal in compliance with these rules.

M.R.A.P. 4(i).   However, Hayes fails to realize that a fundamental element of the rule requires an "adverse judgment or order."   Again, Wolfe dismissed his suit against the Board; as logic would dictate, no judgment in favor of or against the Board was possible.

## CONCLUSION

¶24.    Based on our analysis, we find the chancellor did not abuse his discretion by denying Hayes's motion to intervene.   As the chancellor explained in his order denying Hayes' motion to intervene, the Open Meetings Suit was completely disposed of pursuant to the March 7, 2003 order whereby Wolfe agreed to dismiss his suit.   For all intents and purposes, the action in which Hayes wanted to intervene no longer existed at the time he filed his petition for intervention.   For these reasons, we reverse the judgment of the Court of Appeals and reinstate and affirm the chancellor's order denying Hayes's motion to intervene under Rule 24(a)(2).

¶25.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND RENDERED. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

10

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**