935 So.2d 1026 (2005)
Jack HAYES and George S. Whitten, Sr., Appellants
v.
LEFLORE COUNTY BOARD OF SUPERVISORS, Appellee.
No. 2004-CA-00759-COA.
Court of Appeals of Mississippi.
August 9, 2005.
Rehearing Denied November 29, 2005.
*1027 George S. Whitten, Jr., attorney for appellants.
Willie James Perkins, Greenwood, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. On November 14, 1995, an order was entered into the minute books of the Leflore County Board of Supervisors (LCBS). This order reflected that all five members of the Board agreed to authorize the exchange of lands between Leflore County and two agricultural businesses, Gold Kist and Scott Petroleum. The Board conveyed ten acres of public property to the two businesses and accepted in return two-and-one-half acres of private land owned by the same two businesses. The companies were also given other incentives from the county, including the construction of a railroad spur track, the grant of easements accessing property and water wells and an ad valorem tax exemption.
¶ 2. On July 3, 1998, Phil Wolfe, one of the supervisors, filed a second amended application for injunctive relief against Leflore County and the LCBS, claiming that the order in question had never been presented to the Board, nor voted on by the Board.[1] Wolfe filed this action under the Open Meetings Act, which requires public bodies to keep minutes that accurately reflect final actions taken at each meeting. See Miss.Code Ann. § 25-41-11 (Rev. 2003). Wolfe requested that the chancellor purge the order from the minute books and enjoin the enforcement of the order or, in the alternative, remove Wolfe's name from the recorded vote.
¶ 3. Gold Kist filed an answer and cross petition on June 10, 1998, in response to Wolfe's first application for injunctive relief. Scott Petroleum filed an answer on June 12, 1998. The Leflore County Chancery Court entered an agreed order to stay the proceedings on July 30, 1998, in order for the parties to resolve the controversy. Gold Kist subsequently filed a motion to dismiss on September 12, 2001, and, on January 8, 2002, the trial court dismissed Gold Kist. Scott Petroleum was dismissed on April 19, 2003.
¶ 4. At some time during the proceedings, Southern States Cooperative (Southern) purchased the ten acre parcel of land at issue. In late 2002, Southern filed suit against Wolfe, inter alia, to quiet and confirm its title to the land. One of the clouds on the title was Wolfe's open meetings suit. On March 7, 2003, an agreed order was signed wherein Wolfe agreed to dismiss any claims pending in the open meetings case as well as any claims affecting the property which was subject to Southern's quiet title suit.
*1028 ¶ 5. On March 21, 2003, Harold Emerson, Jack Hayes, and George Whitten, all citizens of Leflore County, filed a motion to intervene, requesting the same relief as Wolfe requested in his second amended motion for injunctive relief. Southern filed a response on April 14, 2003, and Hayes and Whitten (hereinafter Hayes) filed a motion to strike Southern's response on April 22, 2003.[2] The Board filed its response to the motion to intervene on April 25, 2003.
¶ 6. On May 5, 2003, the chancellor entered an order dismissing Wolfe's claims with prejudice. Hayes then filed a motion for relief, challenging the May 5 dismissal order. On June 16, 2003, the chancellor noted the March 7, 2003, agreed order in the quiet title case wherein Wolfe dismissed his claims in the open meetings case and concluded that Hayes had no basis for the motion to intervene. The chancellor denied Hayes's motion to intervene and also found that the "Motion for Relief from an Order or Alternatively Motion to Alter a Judgment is a moot issue since applicants for intervention are not parties and have no standing to seek this relief...." Hayes moved the chancellor to reconsider and, on March 12, 2004, the chancellor denied the motion. Hayes now appeals to this Court asserting many issues, all of which can be condensed into one: whether the chancellor erred in denying Hayes's motion to intervene.

STANDARD OF REVIEW
¶ 7. Trial courts have considerable discretion in ruling on a motion to intervene. Cummings v. Benderman, 681 So.2d 97, 101 (Miss.1996). Consequently, we review rulings on motions to intervene using an abuse of discretion standard of review. Guaranty Nat'l Ins. Co. v. Pittman, 501 So.2d 377, 383 (Miss.1987).

DISCUSSION

I. DID THE CHANCELLOR ERR IN DENYING HAYES'S MOTION TO INTERVENE?
¶ 8. Hayes's main argument is that the chancellor erred in denying their motion to intervene. Hayes filed a motion to intervene pursuant to M.R.C.P. 24(a), which states as follows:
(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action:
(1) when a statute confers an unconditional right to intervene; or
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
¶ 9. The comments to Rule 24 state that the application must be timely; however, there is no set definition of what constitutes "timely," only that the court be provided an opportunity to "take some account of the practical situation and the effect on those already parties and on the economical disposition of judicial business by allowing intervention." In order to reverse the chancellor's decision, we must determine whether Hayes's motion to intervene was timely; whether Hayes has an interest in the subject matter of the action; whether Hayes is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and whether Hayes's interest is already adequately represented. See Pittman, 501 So.2d at 381. Furthermore, *1029 the court in Pittman accepted the Fifth Circuit's approach to timeliness, identifying four additional factors to consider. The factors are as follows:
(1) the length of time during which the would be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would be intervenor may suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.
Pittman, 501 So.2d at 382. See Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir.1977).
In Piambino v. Bailey, 610 F.2d 1306 (5th Cir.1980), the Fifth Circuit allowed intervention where the intervenor filed a motion to intervene seventeen days after he "knew that his interests were no longer adequately represented." Id. at 1325.
¶ 10. In regards to whether Hayes's motion to intervene was timely, we find that it was timely. Although Wolfe signed the agreed order on March 7, 2003, there was no record of dismissal filed until May 5, 2003, when the chancellor ordered all claims of Wolfe pending against the Board dismissed with prejudice. Furthermore, Hayes apparently learned of Wolfe's intention to settle the case sometime in February 2003, realized that his interest would no longer be adequately represented and subsequently filed the motion to intervene. Hayes's motion to intervene was filed on March 21, 2003, well before Wolfe's open meeting action was dismissed. We also note that we can find no prejudice to the existing parties as the open meetings suit had been stayed in 1998 for a number of years and the quiet title suit was not initiated until late 2002.
¶ 11. According to Mississippi Code Annotated Section 25-41-15 (Rev.2003), of the Open Meetings Act, "[t]he chancery courts of this state shall have the authority to enforce the provisions of this chapter upon application of any citizen of the state. . . ." (emphasis added). In other words, any member of the public has the right to enforce the Open Meetings Act. Wolfe, Feb. 1, 2001, A.G. Op. # XXXX-XXXX. This Court is not reading Section 25-41-15 to create an unconditional statutory right to intervene, which other statutes have done. See, e.g., Miss.Code Ann. §§ 11-33-101, 31-5-1, 53-3-19, and 71-3-71. However, Hayes, as a taxpayer of Leflore County, clearly had an interest in the action and his interest was protected by Section 25-41-15. After learning that Wolfe was going to give up his claim, but before the claim was dismissed by court order, Hayes made efforts to secure his interest in the action.
¶ 12. We also cannot find that Hayes's interest was adequately represented when Wolfe agreed to dismiss the open meetings suit in return for the quiet title suit against him to be dismissed. Wolfe clearly did so for his own personal benefit and not to protect the interests of the public.
¶ 13. The court in Pittman stated that "there is much to be said for an overall attitude which gives the benefit of the doubt to the one seeking intervention, particularly where intervention of right under Rule 24(a)(2) is claimed." Pittman, 501 So.2d at 385. We agree, finding that the chancellor's denial of Hayes's motion to intervene was in error. We reverse the chancellor's denial and allow intervention by Hayes.
*1030 ¶ 14. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REVERSED AND RENDERED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] Wolfe's first application for injunctive relief was not included in the record, but appears to have been filed sometime in April 1998.
[2] Harold Emerson passed away on April 21, 2003.