900 So.2d 370 (2004)
Harold HOOD d/b/a H & H Land & Timber, Appellant
v.
Elaine MORDECAI, Appellee.
No. 2002-CA-01593-COA.
Court of Appeals of Mississippi.
August 31, 2004.
Rehearing Denied February 1, 2005.
Certiorari Denied April 28, 2005.
*371 David S. Van Every, attorney for appellant.
Carter Dobbs, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
*372 CHANDLER, J., for the Court.
¶ 1. On August 15, 2002, the Monroe County Circuit. Court denied Harold Hood's motion to set aside a default judgment entered against him, after the circuit court struck his answer to a complaint by Elaine Mordecai alleging he wrongfully cut timber upon her land. Hood's answer was not allowed because of his failures to comply with discovery orders. Hood appeals, asserting six assignments of error which we quote verbatim. Finding no error, we affirm.
1. WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT SETTING ASIDE THE DEFAULT JUDGMENT.
2. WHETHER THE TRIAL COURT ERRED IN NOT HOLDING A HEARING ON DAMAGES OR IN FINDING THE PROOF OF DAMAGES WAS SUFFICIENT.
3. WHETHER THE TRIAL COURT ERRED IN NOT REQUIRING PLAINTIFF TO REAPPLY TO THE CLERK OF COURT FOR ENTRY OF DEFAULT AFTER THE FIRST DEFAULT WAS CURED.
4. WHETHER DEFENDANT WAS ENTITLED TO ACTUAL NOTICE OF HIS COUNSEL'S WITHDRAWAL FROM THE CASE.
5. WHETHER DEFENDANT WAS ENTITLED TO THREE DAYS NOTICE OF THE HEARING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO M.R.C.P. 55(b).
6. WHETHER THE TRIAL COURT ERRED IN NOT FINDING AS A MATTER OF LAW THAT THE PLAINTIFF'S CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS.

FACTS
¶ 2. Mordecai owned land in Monroe County. Persons unknown to her cut the timber on this land. Wilma Robertson and Wanda Allen owned land adjacent to Mordecai's land, and at some prior date that is not precisely ascertainable from the record, they had conveyed the timber interest to their land to Hood. Mordecai's attorney contacted Hood in 1998 and asked him if he knew the person responsible for cutting Mordecai's timber. Hood denied cutting the timber, and told Mordecai's attorney that he had sold the timber interest he purchased from Robertson and Allen to Wayne Moody. Mordecai filed suit against Moody and John Doe on September 18, 1998, and Moody was served with process.
¶ 3. Moody called Mordecai's attorney and told him that he had not cut the timber. Mordecai's attorney again contacted Hood, and Hood told him he had sold the timber rights to Jerry Oaks. On August 24, 1999, Mordecai filed an amended complaint against Hood and John Doe. Process was served the next day, and on October 18, 1999, Hood was served with plaintiff's first request for admissions. Hood filed no answer to the complaint nor response to the discovery.
¶ 4. On January 24, 2000, Mordecai filed a motion for default judgment and application for a writ of inquiry. On January 25, 2000, Hood received personal service of the motion and application. On February 1, 2000, the circuit court held a hearing, and Hood personally appeared. Hood testified that he had recently hired an attorney to defend the action, and that his mailing address was 1414 Hughes Road, Columbus, Mississippi 39702. The circuit court granted Hood ten days to answer the complaint and assessed sanctions of $730.
¶ 5. On February 10, 2000, Luanne Stark Thompson entered an appearance and filed *373 Hood's answer to the complaint and response to the plaintiff's first request for admissions. On May 4, 2000, Mordecai mailed plaintiff's request for production of documents to Thompson. No response was made, and on June 16, 2000, Mordecai filed a motion to compel and mailed a copy of the motion to Thompson. On June 26, 2000, the circuit court entered an order setting a hearing on the motion for July 17, 2000.
¶ 6. During May, June and July of 2000, Thompson made multiple efforts to contact Hood personally, and twice wrote to him via certified mail explaining the necessity of complying with discovery. Both of these letters were returned "unclaimed." Aside from the initial meeting in which Hood retained Thompson, Hood only met with her on one occasion, outside her office as she was returning from a court appearance on a different matter, and Hood told her he had not located the documents showing that he had conveyed his interest in the timber on the land adjacent to Mordecai's, but he would find them and give them to her. Hood never provided these documents to Thompson.
¶ 7. On the date of the hearing, July 17, 2000, Thompson moved to withdraw as counsel, and the motion was granted. Hood did not attend the hearing. After the hearing, the circuit court entered an order stating that if Hood had not responded to the request for production of documents by August 17, 2000, Hood's answer to the complaint and answer to the plaintiff's first request for admissions would be stricken, and that Mordecai could then proceed to obtain judgment by default. A copy of the order was mailed by certified mail to the address that Hood provided the court as his mailing address, but it was returned unclaimed. On August 30, 2000, the circuit court entered an order striking Hood's answers to the complaint and plaintiff's first request for admissions, and ordered that Mordecai could proceed to obtain judgment by default. On the same day, the circuit court issued a writ of inquiry, an interlocutory judgment on the writ of inquiry and a default judgment against Hood for $122,044.
¶ 8. Mordecai personally served Hood on November 6, 2000, with a set of interrogatories and request for production of documents aimed at discovering his financial assets in preparation for collecting on the default judgment. Hood did not respond to these discovery requests. Mordecai filed a motion to compel, and an order was entered on January 29, 2001, setting a hearing for February 20, 2001, and Hood was personally served with a copy of this order. Hood did not appear at the hearing. On April 5, 2001, the circuit court entered an order finding Hood in contempt and ordering his incarceration until he complied with discovery.
¶ 9. While incarcerated, on May 4, 2001, Hood filed a petition for bankruptcy in federal court, and he was released. On May 24, 2001 he filed to dismiss the bankruptcy petition, and on June 4, 2001, the bankruptcy pleading was dismissed. On August 10, 2001, Hood filed the motion to set aside the default judgment that led ultimately to this present appeal. And, on January 24, 2002, Hood filed yet a second answer to the initial complaint and response to the initial discovery which had been stricken on August 30, 2000 for failure to comply with discovery. On June 26, 2002, the circuit court held a hearing upon Hood's M.R.C.P. 60(b) motion to set aside the default judgment, and on August 12 issued an order denying that motion.

ANALYSIS

1. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO *374 SET ASIDE THE DEFAULT JUDGMENT
¶ 10. M.R.C.P. 60(b) motions to set aside default judgments are addressed to a trial court's discretion and are subject to a three part balancing test. In determining whether the trial court has abused its discretion, we consider three factors: "whether the defendant has good cause for default . . . whether the defendant in fact has a colorable defense to the merits of the claim, and . . . the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside." King v. Sigrest, 641 So.2d 1158, 1162 (Miss.1994) (quoting Johnson v. Weston Lumber & Building Supply Co., 566 So.2d 466, 468 (Miss.1990)).
¶ 11. In this case, Hood contends he had both good cause for default and a colorable defense. At the hearing on the motion to set aside the default judgment, Hood belatedly introduced into evidence a copy of a deed by which he conveyed his interest in the timber on the land adjacent to Mordecai's land on August 25, 1995. A copy of this deed was also attached to the second answer and discovery response that Hood filed on January 24, 2002. Hood contended at the June 26, 2002 hearing upon his M.R.C.P. 60(b) motion to set aside the default judgment that when Mordecai's attorney first contacted him, he was unable to remember precisely to whom he conveyed this timber interest and he had misplaced his copy of the deed. Moreover, Hood further contended that the document had been recorded but not indexed in the Monroe County Chancery Clerk's office, which prevented his attorney from finding it before the default judgment was granted. However, the record shows that Hood's first attorney, Thompson, testified concerning Hood's failures to contact or provide these documents to her. Thompson's recollection was that Hood had agreed to locate the deed, but he never contacted her to tell of any problem in locating the deed. Rather, her testimony was that Hood repeatedly refused to communicate with her resulting in her withdrawal as Hood's counsel. Moreover, Hood states in his brief that he did not retain his present council until February of 2001, over four months after the default judgment was granted. The record is devoid of any finding other than the findings of the circuit court that the excuse Hood offered for his default lacked good cause.
¶ 12. As to whether Hood had a colorable defense, the record is not clear as to exactly when Mordecai's timber was cut, but Hood sold his timber interest to the adjoining land on or about August 25, 1995, and Mordecai filed suit on September 18, 1998, so it would appear that a colorable defense might exist. However, where there is no excuse for delay and the potential for prejudice is clear, a colorable defense alone has been found to be insufficient to reverse the denial to set aside a default judgment. Guaranty Nat. Ins. Co. v. Pittman, 501 So.2d 377, 388 (Miss.1987). In Pittman, the supreme court found that the possibility of a year or more delay in submitting a matter to a jury demonstrated prejudice in that witnesses and evidence could be lost to the plaintiff. Id. That case is directly analogous to this one because the passage of time caused by Hood's delay and refusal to comply with the circuit court's orders will prevent assessment of damage and alteration of the evidence. New growth on cut over land completely changes the landscape. Additionally, Mordecai was forced to proceed to a final judgment without knowledge of the timber deed. Any new claim would not prevail against a defense of a one year statute of limitations raised by the individual to whom Hood sold the timber rights. Miss.Code Ann. § 15-1-33 (Rev.2003). *375 Therefore, the failure to show any excuse for cause and the obvious prejudice to Mordecai's case, support the circuit court's decision to refuse to set aside the default judgment. There is no merit to this assignment of error.

2. WHETHER THE TRIAL COURT ERRED IN NOT HOLDING A HEARING ON DAMAGES OR IN FINDING THE PROOF OF DAMAGES WAS SUFFICIENT
¶ 13. The record shows that the circuit court did hold a hearing on August 30, 2000. Although the record does not contain a transcript of what occurred at the hearing, all four orders and judgments signed on that date-striking Hood's answer, granting the default judgment, granting a writ of inquiry, and granting an interlocutory judgment on writ on inquiry-reference the hearing, and the interlocutory judgment itself contains three pages of specific findings of fact concerning the calculation of damages and the circuit court's consideration of issues such as the size of the trees cut, the value of the timber cut and the cost of reforestation and for a default judgment. Hood's argument concerning this issue is without any factual basis.

3. WHETHER THE TRIAL COURT ERRED IN NOT REQUIRING PLAINTIFF TO REAPPLY TO THE CLERK OF COURT FOR ENTRY OF DEFAULT AFTER THE FIRST DEFAULT WAS CURED
¶ 14. The central issue of this assignment of error is whether the default judgment was entered as a sanction for discovery violations, pursuant to M.R.C.P. 37(b)(2)(C), or whether the default judgment was entered for the more common occurrence of a failure to defend, pursuant to M.R.C.P. 55(b). The record shows that the circuit court was considering the issue as a sanction for failure to answer discovery. The July 17, 2000 hearing and resulting order left no doubt as to what the circuit court intended to do if Hood continued to frustrate discovery procedure. However, inexplicably, the actual order granting the default judgment, which was entered on August 30, 2000, states that the default judgment was entered pursuant to M.R.C.P. 55(b)(2). The order does not indicate that Mordecai's attorney drafted it, but it is clear that Mordecai had prepared an order for default judgment much earlier in this action that was based on M.R.C.P. 55(b), so it is possible that this clerical error came about from the cutting and pasting of documents common to the legal practice. Regardless, of how the clerical error came about, it is clearly a clerical error, and the default judgment was granted as an extreme sanction for discovery abuse.
¶ 15. The question raised by this assignment of error is whether Mordecai was required to first obtain an entry of default by the clerk of court, pursuant to M.R.C.P. 55(a), prior to obtaining the default judgment based on the entirely separate ground of discovery abuse, pursuant to M.R.C.P. 37(b)(2)(C). This question has not been specifically addressed by the supreme court. However, the supreme court has affirmed a M.R.C.P. 37(b)(2)(C) default judgment where no application of an entry of default by the court clerk was obtained. Amiker v. Drugs For Less, Inc., 796 So.2d 942(¶ 3) (Miss. 2001). Moreover, the comments to M.R.C.P. 55 also provide, "[t]he fact that Rule 55(a) gives the clerk the authority to enter a default is not a limitation on the power of the court to do so." And, the paragraph proceeding this quote from the comment expressly indicates that M.R.C.P. 37(b)(2)(C) is a totally distinct avenue for obtaining a default judgment than the provisions of M.R.C.P. 55. Furthermore, the comments to M.R.C.P. 55 indicate that the purpose of M.R.C.P. 55(a) is to require the clerk of court to examine the affidavits to determine *376 if a party is actually in default for failure to plead or defend. This issue is not present in this case. There was no doubt that Hood had entered an answer. It was that very answer that the circuit court ordered be stricken, which led to the default judgment. Additionally, as more fully discussed in Issue Five, once a default judgment is entered, it is too late for a defaulting party to cure his default via M.R.C.P. 55, and his only avenue for relief becomes the separate, and more rigorous route of M.R.C.P. 60. This issue is without merit.

4. WHETHER DEFENDANT WAS ENTITLED TO ACTUAL NOTICE OF HIS COUNSEL'S WITHDRAWAL FROM THE CASE
¶ 16. The record is clear that Hood's attorney, Thompson, contacted him at least three times soliciting his help in answering discovery requests, and she informed him that she would withdraw if he continued to refuse to communicate with her. A copy of the July 17, 2000 order ordering that his answer to the complaint and the first answer to the plaintiff's first request for admissions be stricken was mailed by certified mail to the address that Hood provided the court. It was returned unclaimed. It is ironic that Hood would now seek to place any fault with the attorneys or court system involved in this case. This Court has held that while a party must receive at least five days notice of any hearing on a motion, two weeks notice of an attorney's withdrawal was ample notice for a party to obtain new counsel. McDonald v. McDonald, 850 So.2d 1182 (¶¶ 18-20) (Miss.Ct.App.2002). In this case, counsel withdrew on July 17, 2000, and mailed notice to the address Hood had provided her. The circuit court struck Hood's answer and single discovery request on August 30, 2000. This assignment of error is without merit.

5. WHETHER DEFENDANT WAS ENTITLED TO THREE DAYS NOTICE OF THE HEARING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO M.R.C.P. 55(b)
¶ 17. As discussed in the third assignment of error, this default judgment was rendered pursuant to M.R.C.P. 37(b)(2)(C). The comments to M.R.C.P. 55 make clear this is a separate and distinct route to a default judgment. Therefore, the three day notice provision of M.R.C.P. 55(b) is not applicable to this action. Moreover, the comments to M.R.C.P. 55 state that the notice provision of M.R.C.P. 55(b) operates in the manner of a shield to protect a party who has evidenced the intent to defend against an asserted claim, and allow him the opportunity to appear and explain why an entry of default should be set aside prior to a court entering an order for a default judgment, after which a defaulting party's only avenue of relief is under the less lenient terms of M.R.C.P. 60(b) for relief from judgment or order upon mistake, inadvertence or newly discovered evidence. Chassaniol v. Bank of Kilmichael, 626 So.2d 127, 134 (Miss.1993). In this case, Hood not only evidenced an intent not to defend, he also exhibited an intent to evade the jurisdiction and power of the court to finally dispose of this matter in accordance with the laws of Mississippi. In this assignment of error, Hood attempts to use the shield available to a well intentioned defendant who finds himself in a position of technical default as a sword against Mordecai and the circuit court. This issue is without merit.

6. WHETHER THE TRIAL COURT ERRED IN NOT FINDING AS A MATTER OF LAW THAT THE PLAINTIFF'S CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS
¶ 18. This is an affirmative defense which must be pled under M.R.C.P. *377 12(b)(6). In her brief, Mordecai asserts that Hood's initial answer, which was prepared by Thompson and later stricken by the circuit court, failed to raise this affirmative defense. However, this assertion is incorrect, and the record affirmatively shows that the first answer raised the defenses of both the general failure to state a claim upon which relief can be granted, as well as the more specific defense of a statute of limitations. However, as previously discussed, that answer was stricken for failure to abide by discovery. On January 24, 2000, nearly a year and a half after the default judgment was granted, Hood's present attorney filed a second answer attempting to raise this defense along with the belatedly discovered deed of timber rights. A default judgment is a final judgment on the merits which extinguishes all claims or defenses, raised or unraised, that stem from the occurrence giving rise to the action. Franklin Collection Service v. Stewart, 863 So.2d 925(¶ 10) (Miss.2003). As such, the only avenue for Hood to reopen the pleadings and assert this defense was through a M.R.C.P. 60(b) motion. As discussed in the first assignment of error, the circuit court did not err in denying Hood's M.R.C.P. 60(b) motion. This assignment of error is without merit.
¶ 19. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING C.J., BRIDGES, P.J., LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.