RANDOLPH, Justice,
for the Court:
¶ 1. In the case sub judice, this Court is presented with competing contracts for the acquisition of the same property: Madison Ambulatory Surgery Center, LLC’s (“ASC”) membership interest and its assets, which included a Certificate of Need (“CON”) to exclusively operate an ambulatory center in Canton, Mississippi. St. Dominic-Jackson Memorial Hospital (“St. Dominic”) entered into an agreement to purchase ASC and its interest in the aforementioned property. As the deal was not consummated, ASC and its interests in this property were placed on the market again. ASC then entered into an agreement for Madison HMA, Inc. (“HMA”) to acquire the same interest. Subsequently, St. Dominic sued ASC to enforce the first agreement, and HMA moved to intervene in the suit to protect its interest. After the Chancery Court of Madison County denied HMA’s motion to intervene, HMA proceeded with this interlocutory appeal.
¶ 2. As intervention of right existed, this Court concludes that the chancellor erred by denying HMA’s motion to intervene. Therefore, this Court reverses that ruling and remands for further proceedings consistent with this opinion.
FACTS
¶ 3. The object of the present dispute is not only ASC’s membership interest, but also the right to operate the facility granted by the CON. The CON, issued by the Mississippi State Department of Health, permitted the construction and exclusive operation of an ambulatory center within a designated area. The Department of Health initially issued the CON to Progressive Family Medical Corporation (“Progressive”) on April 25, 2002.
¶ 4. On December 19, 2002, Progressive transferred ownership of the CON to ASC. On January 31, 2005, Heritage Banking Group (“Heritage”) issued a loan to Progressive for $2.92 million and, as collateral, Progressive granted Heritage a security interest in its business assets. In March 2008, Progressive defaulted on the loan, and Heritage initiated foreclosure proceedings on the real property. Before Progressive’s default, a Tennessee corporation, Surginet, Inc., transferred seventy-seven percent of its membership interest in ASC to Progressive, which subjected that interest to Heritage’s security interest. Thereafter, an offer to sell ASC’s membership interest was made to St. Dominic.
¶ 5. On April 28, 2008, St. Dominic sent a purchase agreement to ASC regarding the purchase of its membership interest. Two days later, the owners holding ninety-two percent of the membership interest in ASC executed a letter of agreement with St. Dominic. This agreement set a target date of thirty days after its execution for the completion of the purchase, and contained two conditions precedent which precluded any binding effect upon St. Dominic until their satisfaction. The first condition was that a final agreement for the transfer of the CON and the purchase of ASC’s building must be executed. The second condition was that the Department of Health must approve the transfer of the CON to St. Dominic. By June 24, 2008, nearly thirty days after the target date, the transaction had not been completed, *1213 and ASC sent a letter informing St. Dominic that it intended to place the CON and the building back on the market, based upon St. Dominic’s alleged failure to act. Thus, ASC took the position that St. Dominic had breached the agreement.
¶ 6. On July 8, 2008, ASC entered into a letter of intent with HMA for the purchase of its membership interest, assets, and transfer of its CON. HMA placed $80,000 in escrow for the benefit of ASC, which represented ten percent of the $800,000 purchase price.[1] That contract reveals, in relevant part, that:
[HMA] contemplates the expenditure of substantial sums of time and money in connection with legal, accounting, financial, and due diligence work to be performed in conjunction with the proposed transaction prior to execution of Definitive Agreements ... [ASC] shall not directly or indirectly, solicit or entertain offers from, negotiate with, or in any manner encourage, discuss, accept or consider any proposal of any other person relating to the purchase of the CON....
A mutual agreement to terminate was the only avenue to release the signatories from their respective obligations.
¶ 7. On September 18, 2008, St. Dominic initiated suit, alleging that ACS had breached its agreement for the purchase and transfer of ASC and its CON. St. Dominic sought specific performance under the agreement and a preliminary injunction to prevent ASC from engaging in negotiations with any other person or entity.
¶ 8. On November 19, 2008, Heritage moved the chancery court for leave to intervene in the suit between St. Dominic and ASC, which was granted. Heritage’s security interest in ASC’s membership interest, which resulted from an after-acquired clause in the promissory note, indirectly allowed it to control the CON.
¶ 9. On December 23, 2008, St. Dominic and ASC agreed to a preliminary injunction, which provided:
Defendants are hereby enjoined and restrained from directly or indirectly initiating, soliciting, encouraging, negotiating or responding favorably to any solicitation from any other person or entity regarding the sale of [ASC], their membership interests in [ASC], or any of the assets of [ASC], including the [CON]....
Defendants are hereby enjoined and restrained from taking any other action to market or sell [ASC], their membership interests in [ASC], or any of the assets of [ASC], including the [CON], to any other person on entity.
Defendants are hereby enjoined and restrained from finalizing any transaction with any other person or entity for the sale of [ASC], their membership interests in [ASC], or any of the assets of [ASC], including the [CON], to any other person or entity.
(Emphasis added.)
¶ 10. On January 27, 2009, HMA moved to intervene in the action. Relying on its executed, binding letter of intent, HMA maintained that it possessed the exclusive contractual right to finalize the purchase of ASC, its assets, and its interest in the CON. HMA averred that its interests were not adequately represented by ASC and asserted that if it were not allowed to intervene, its interest could be impeded or impaired, and it was not otherwise protected.
¶ 11. Following argument, the chancellor denied HMA’s motion, offering only *1214 that the motion was not made in good faith. In so doing, the chancellor failed to address the requirements to be considered for purposes of intervention of right, see Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 381 (Miss.1987), or provide any factual findings which might aid this Court in its appellate review. Following that ruling, HMA sought interlocutory appeal.
ISSUE
¶ 12. This Court will consider:
Whether the chancery court erred in denying HMA’s Rule 24 motion for intervention of right.
STANDARD OF REVIEW
¶ 13. Rule 24 governs both intervention of right and permissive intervention, stating, in pertinent part, that:
(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action:
[[Image here]]
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.[2]
(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action:
[[Image here]]
(2) when an applicant’s claim or defense and the main action have a question of law or fact in common.
Miss. R. Civ. P. 24 (emphasis added).
¶ 14. Rule 24, its comment, and the underlying purposes of the Rules clearly demonstrate that a de novo standard of review applies to all intervention-of-right judgments. However, our caselaw regarding the proper standard of review for Rule 24 intervention rulings is in conflict. We previously have stated “a trial court has considerable discretion in ruling on a motion to intervene.” Hayes v. Leflore County Bd. of Supervisors, 935 So.2d 1015, 1017 (Miss.2006) (quoting City of Tupelo v. Martin, 747 So.2d 822, 826 (Miss.1999)). See also Cohen v. Cohen, 748 So.2d 91, 93 (Miss.1999) (holding Rule 24 rulings are subject to an abuse-of-discretion standard of review). Contrastingly, this Court has held, in the seminal case for intervention under our current rules, that “Rule 24(a)(2) is entitled ‘Intervention of Right’ and includes the mandatory ‘shall,’ thus giving the impression that the trial court has little, if any, discretion in the matter[,]” which is consistent with the Comment to Rule 24, which states that “[a]n application for permissive intervention is addressed to the discretion of the court, whereas an application for intervention of right poses only a question of law.” Guar. Nat’l Ins. Co., 501 So.2d at 381 n. 1; Miss. R. Civ. P. 24 cmt. (emphasis added).
¶ 15. Circumscribing all intervention decisions is that the Rules “shall be construed to secure the just, speedy, and- inexpensive determination of every action.” Miss, R. Civ. P. 1. The Comment to Rule 1 adds that:
*1215 [t]he mandate in the final sentence of Rule 1 is only one of a number of similar admonitions scattered throughout the rules [and] directing that the rules be interpreted liberally in order that the procedural framework in which litigation is conducted promotes the ends of justice and facilitates decisions on the merits, rather than determinations on technicalities.
Miss. R. Civ. P. 1 cmt.
¶ 16. Regarding permissive intervention (Rule 24(b)(2)), the abuse-of-discretion standard is logically sound, for the trial judge may permissively grant or deny a motion to intervene, provided there is a common question of law or fact and the motion was timely filed. See Miss. R. Civ. P. 24(b)(2). Accordingly, the rule set forth in Cohen is proper for permissive intervention under Rule 24(b)(2). See Cohen, 748 So.2d at 93.
¶ 17. However, with regard to intervention of right, the abuse-of-discretion standard deviates greatly from this Court’s historical review of questions of law.[3] It is well-settled that questions of law are to be reviewed de novo. See Donald v. Amoco Prod. Co., 735 So.2d 161, 165 (Miss.1999). As Rule 24(a) addresses the right of one to intervene, it constitutes a question of law. Prudence, logic, and precedent dictate a de novo review. This position is consistent with the federal court’s de novo review of the denial of a motion for intervention of right pursuant to Federal Rule of Civil Procedure 24(a)(2). See Trans Chem. Ltd. v. China Nat’l Mach. Imp. and Exp. Corp., 332 F.3d 815, 822 (5th Cir.2003); Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977). Thus, our analysis of the chancery court’s denial of HMA’s motion for intervention of right employs a de novo standard of review.
ANALYSIS
¶ 18. By order, the chancellor denied HMA’s motion for intervention of right in its entirety, offering only that the motion was “not being well taken.” There are no on-the-record findings of fact or conclusions of law in support of the ruling. Thus, we are provided with no insight into the basis for the chancellor’s ruling.
¶ 19. In Guaranty National, this Court held that when a movant satisfies four separate requirements, the trial court “shall” allow intervention. Guar. Nat’l Ins. Co., 501 So.2d at 381. In order to intervene as a matter of right, a movant must: “(1) ... make timely application, (2) ... have an interest in the subject matter of the action, (3) ... be so situated that disposition of the action may as a practical matter impair or impede his ability to protect his interest, and (4) his interest must not already be adequately represented by existing parties.” Id. See also Hood ex rel. State Tobacco Litigation v. State, 958 So.2d 790, 802-803 (Miss.2007); Perry County v. Ferguson, 618 So.2d 1270, 1272 (Miss.1993). The requirements of Rule 24(a)(2):
are not bright lines, but ranges — not all “interests” are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness. Application of the rule requires that its components be read not discreetly, but together. A showing that a very strong *1216 interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention.
Cummings v. Benderman, 681 So.2d 97, 101 (Miss.1996) (quoting Int’l Paper v. Town of Jay, Me., 887 F.2d 338, 344 (1st Cir.1989)) (emphasis added).

(1) Did HMA have an interest in the subject matter of the action?

¶ 20. The subject matter of this action is ASC’s membership interest, which holds a CON exclusively to operate an ambulatory center. Given HMA’s agreement with ASC, this Court finds that HMA has an interest in that subject matter, i.e., “a claim or interest in property which is the subject of a pending action and which may be materially affected by the outcome of the litigation.... ” Miss. R. Civ. P. 24 cmt.
¶ 21. In order to intervene, a movant must assert a “ ‘direct, substantial, legally protectable interest’ in the proceedings. ... A movant found to be ‘a real party in interest’ generally establishes sufficient interest.” Ferguson, 618 So.2d at 1272 (citing League of United Latin Amer. Citizens v. Clements, 884 F.2d 185, 187 (5th Cir.1989)). An “interest” is defined as “[a] legal share in something; all or part of a legal or equitable claim to or right in property.” Black’s Law Dictionary 828 (8th ed. 2004). HMA’s contract with ASC is empirical evidence of its “ ‘direct, substantial, legally protectable interest’ in the proceedings.” Ferguson, 618 So.2d at 1272.
¶ 22. Mississippi previously has recognized interests that are contingent upon the outcome of trial. In Guaranty National, this Court determined that intervention was warranted even in spite of the fact that the would-be intervenor was not capable of initiating suit directly. See Guar. Nat’l Ins. Co., 501 So.2d at 383. This Court, although not directly determining that an interest was present, found that “[a]ll that is necessary is that [the would-be intervenor] establish an interest in the rights that are at issue in the litigation.” Id. (citing Hartford Accident and Indem. Co. v. Crider, 58 F.R.D. 15, 18 (N.D.Ill.1973)). The pending suit involves ASC’s membership interest and interest in assets, including ASC’s interest in the CON.
¶ 23. In the case sub judice, HMA alleges it possesses ASC’s exclusive rights to the CON, which it received pursuant to the provisions contained in the terms of the dually-executed letter of intent. See ¶ 6 supra. The question then becomes whether these are sufficient interests for purposes of an intervention of right. St. Dominic and HMA are in pursuit of the same property.
¶ 24. ASC conveyed rights or interests to HMA by contract. The right to negotiate for the purchase of the same interests is why St. Dominic initiated suit. Therefore, it cannot logically be suggested that these interests are of no import. Accordingly, HMA’s putative right exclusively to negotiate the acquisition of ASC, its assets, and the CON was “direct, substantial, [and] legally protectable.... ” Ferguson, 618 So.2d at 1272.
¶ 25. The CON is a one-of-a-kind object which law recognizes as unique. Both St. Dominic and HMA claim to possess a “direct, substantial, [and] legally protectable interest” in acquiring the same CON. Thus, both St. Dominic and HMA have an “interest in the subject matter of the action. ...” Guar. Nat’l Ins. Co., 501 So.2d at 381.

*1217
(2) Did HMA make a timely application?

¶ 26. A court considers whether an application or motion for leave to intervene was timely for the purpose of determining prejudice to existing parties. See id. at 382. Mississippi has adopted a four-factor test for determining the timeliness of an application to intervene. See Hood ex. rel, 958 So.2d at 805-06; Guar. Nat’l Ins. Co., 501 So.2d at 381-82. In this case, the timeliness of HMA’s motion to intervene is not in serious dispute.
¶ 27. Four months and nine days transpired between St. Dominic’s filing of this action and HMA’s motion for leave to intervene. It is undisputed that HMA was not placed on actual notice of St. Dominic’s action until shortly before HMA’s motion to intervene was filed. In short, any delay was minimal, as the record reveals no more than one month elapsed between HMA’s constructive knowledge of St. Dominic’s suit and the filing of its motion to intervene. This length of time pales in comparison to the 119-day period of time at issue in Guaranty National. See Guar. Nat’l Ins. Co., 501 So.2d at 382. Thus, the motion was filed in a timely manner.
¶ 28. Furthermore, St. Dominic has presented no evidence of prejudice from permitting the intervention,[4] instead summarily arguing at the motion hearing that if HMA is allowed to intervene it will be prejudiced by the change of a scheduled court date. During that motion hearing, HMA offered that no discovery or depositions had occurred or otherwise been taken, and the chancellor acknowledged same. Furthermore, HMA’s attorney asserted that there was no need for extended discovery and advised the court that HMA would not delay the trial. In the absence of actual prejudice being shown, St. Dominic’s argument of prejudice due to untimeliness carries little, if any, weight when balanced against the prejudice to be suffered by the putative intervenor, i.e., being excluded from presenting a case at all.
¶ 29. Should St. Dominic be allowed to proceed without contest and procure the CON that HMA claims it has the right to obtain, without HMA being afforded an opportunity to contest such, the prejudice that will be suffered by HMA is obvious. Specifically, its claim will be extinguished, while it is denied access to the courts to assert such. Conversely, a holding allowing intervention will eliminate a separate suit, decrease litigation expenses for the parties, relieve the court system from multiple actions, and prevent the risk of inconsistent judgments, thereby furthering the stated purpose and spirit of our Rules.
¶ 30. Accordingly, justice is well-served in finding that HMA made a timely application under Rule 24.

(3) Is HMA so situated that disposition of the action may, as a practical matter, impair or impede its ability to protect its interest?

¶ 31. HMA claims that it was not provided notice of the action initiated by St. Dominic against ASC, and that ASC agreed to a preliminary injunction which deprived HMA of its contractually acquired right. See ¶ 9 supra.
¶ 32. If St. Dominic prevails at trial in HMA’s absence, then HMA’s putative right to negotiate exclusively for the sale and/or purchase of ASC will disappear. Practically speaking, although HMA’s legal claim against ASC will survive, the object which it seeks, the CON, will no longer be available. If HMA is not al *1218 lowed to intervene, it cannot be accorded a full measure of justice.
¶ 33. Therefore, HMA is so situated that disposition of the St. Dominic-ASC action, without intervention, will seriously impair or impede its ability to protect its interests.
(⅝) Are HMA’s interests already adequately represented by existing parties?
¶ 34. Clearly, HMA’s interest are not adequately represented in this case. St. Dominic and HMA’s interests are antithetical. Moreover, ASC wants only to conclude the transaction. Common sense dictates that ASC is indifferent to which party prevails, for the transaction is for the same price in both agreements, $800,000. HMA and St. Dominic both seek to obtain the one-of-a-kind CON. Their purpose is to obtain the CON in order to provide ambulatory surgical services within a designated area. Determinative on this factor is the preliminary injunction. ASC has agreed to cease and desist negotiations with anyone other than St. Dominic, a right that ASC contracted away when it executed the letter of intent with HMA. Accordingly, HMA’s interests are not adequately protected by ASC.
CONCLUSION
¶ 35. In sum, the four requirements necessary to establish intervention of right, viewed collectively, are met. Therefore, this Court concludes that the chancery court erred in denying HMA’s motion to intervene. Accordingly, this Court reverses that ruling and remands for further proceedings consistent with this opinion.
¶ 36. REVERSED AND REMANDED.
WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, AND KITCHENS, JJ, CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. CHANDLER, J„ NOT PARTICIPATING.

. This was the same purchase price as ASC agreed to with St. Dominic.

. The Comment to Rule 24 adds that “when it has happened that an owner or part owner has a claim or interest in property which is the subject of a pending action and which may be materially affected by the outcome of the litigation, he has been allowed to intervene to protect his interest; this is referred to as equitable intervention.” Miss. R. Civ. P. 24 cmt. (emphasis added).

. Unquestionably, the requirements for intervention of right under Rule 24(a)(2) are not “stated with mathematical precisión),]” such that the trial court "is of necessity required to exercise discretion in judgment....” Guar. Nat’l Ins. Co., 501 So.2d at 381 n. 1. This discretion, however, does not change the fact that "an application for intervention of right poses only a question of law.” Miss. R. Civ. P. 24 cmt.

. As ASC made no objections to HMA’s motion, any prejudice as to it is waived.