## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01707-COA

THE ESTATE OF JOAN B. ROOSA, DECEASED:　　　　　　APPELLANTS
CHRISTOPHER A. ROOSA, JOHN D. ROOSA,
STUART ALLEN ROOSA, JR., ALL
INDIVIDUALLY; KATHLEEN ROOSA AND
DANIELLE ROOSA, BY AND THROUGH
THEIR NEXT FRIEND AND NATURAL
GUARDIAN, JOHN D. ROOSA; SOPHIA
ROOSA, STUART ALLEN ROOSA, III AND
BARRON ROOSA, BY AND THROUGH THEIR
NEXT FRIEND AND NATURAL GUARDIAN,
STUART ALLEN ROOSA, JR.; CHRISTOPHER
A. ROOSA, AS EXECUTOR AND TRUSTEE OF
THE JOAN B. ROOSA FAMILY TRUST; AND
VELDA ANN POWELL

v.

ROSEMARY D. ROOSA　　　　　　　　　　　　　　　APPELLEE

DATE OF JUDGMENT:　　　　　　11/17/2017
TRIAL JUDGE:　　　　　　　　HON. CARTER O. BISE
COURT FROM WHICH APPEALED:　HARRISON COUNTY CHANCERY COURT,
　　　　　　　　　　　　　　FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS:　JOHN G. McDONNELL
　　　　　　　　　　　　　　COURTNEY McDONNELL SNODGRASS
ATTORNEY FOR APPELLEE:　　PAUL M. NEWTON JR.
NATURE OF THE CASE:　　　　CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:　　　　　　　　AFFIRMED - 04/23/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., GREENLEE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.　This case chiefly concerns whether submitting a codicil for probate triggers a

forfeiture provision in a decedent's will.　If the clause is triggered, the question becomes

whether good faith prevents application of the forfeiture. Finding no error in the chancery court's refusal to forfeit a daughter from inheriting under her mother's will, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. This appeal involves litigation that has been ongoing since Joan Roosa died in October 2007. Joan had an ample estate partly from businesses operated by her and her husband, Colonel Stuart Roosa, who had flown the command module *Kitty Hawk* to the moon on the Apollo 14 mission. Joan executed a will in 2002 and a codicil to it in 2004; a second codicil was executed in 2007. At the time of her death, Joan had four children—Christopher, Rosemary, Stuart, and John—and a number of grandchildren. Under the terms of the will and the first codicil, all of the children and grandchildren were to receive some proceeds under the will. In contrast, under the second codicil, the bulk of the estate was left to the benefit of Rosemary alone.

¶3. Christopher, the executor of Joan's estate, submitted Joan's will and the first codicil for probate in the Harrison County Chancery Court, First Judicial District. Shortly after, Rosemary submitted the will, the first codicil, and the second codicil for probate. Christopher and Joan's other children, including Joan's grandchildren, contested the validity of the second codicil, claiming among other things that Rosemary had undue influence over Joan.

¶4. A jury was empaneled to determine the validity of the second codicil. After trial, the jury returned a general verdict for Christopher and the other contestants, rejecting the second codicil. The chancery court subsequently entered an order stating the second codicil was

2

refused for probate.

¶5. Joan's will had a forfeiture provision which would deprive any beneficiary from taking under the will if they contested the will. Christopher sought to have this forfeiture provision enforced against Rosemary since she filed the second codicil for probate, claiming that she interfered with Joan's wishes. Initially, the chancery court found that Rosemary's actions in probating the second codicil were in good faith, which meant that the forfeiture provision did not prevent her from inheriting her share of Joan's estate. The chancery court reiterated this factual and legal finding in several orders during the years of contention between the parties. After intervening law from the Mississippi Supreme Court, the chancery court held that the forfeiture provision was unenforceable because it lacked a good faith and probable cause exception. After extended motion practice from Christopher, the chancery court deleted the language from prior orders finding that Rosemary had acted in good faith.

¶6. Christopher now appeals, asserting the chancery court erred in: (1) finding that the forfeiture provision was not enforceable against Rosemary; (2) refusing to give the jury interrogatories; (3) allowing Rosemary to use Joan's car while waiting to settle Joan's estate; and (4) allowing Rosemary's former attorneys to intervene.

**STANDARD OF REVIEW**

¶7. "When reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review." *In re Last Will & Testament of Carney*, 758 So. 2d 1017, 1019 (¶8) (Miss. 2000). With respect to other issues in a will contest, "[t]ypically this Court will not disturb a chancellor's

findings of fact unless the chancellor was manifestly wrong and not supported by substantial, credible evidence." *In re Estate of Wright*, 829 So. 2d 1274, 1276 (¶5) (Miss. Ct. App. 2002).

## I. The forfeiture provision will not be enforced against Rosemary.

¶8. The chancery court found that Rosemary should not forfeit her share of her mother's estate due to attempting to probate the second codicil. Christopher argues that the forfeiture provision should be enforced against Rosemary because she did not act in good faith when submitting the second codicil for probate. In response, Rosemary argues that submitting a codicil for probate is not contesting the will, so the forfeiture provision is not triggered at all. Alternatively, Rosemary contends that the forfeiture provision is not applicable since she submitted the second codicil in good faith.

¶9. An in terrorem clause in a will acts to frighten a beneficiary that any benefit they might receive will be forfeited if they contest or otherwise dispute the validity of the will. *See Taylor v. Rapp*, 124 S.E.2d 271, 272 (Ga. 1962). Joan's will contained just such a forfeiture provision. It read in relevant part:

> If any beneficiary hereunder shall contest the probate or validity of this Will or any provision thereof, or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this Will or to prevent any provision thereof from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), than all benefits provided for such beneficiary are revoked and such benefits shall pass to the residuary beneficiaries of this Will (other than such beneficiary) in the proportion that the share of each such residuary beneficiary bears to the aggregate of the effective shares of the residuary.

¶10. The forfeiture clause explicitly states that "regardless" of whether a beneficiary starts

4

proceedings "in good faith and with probable cause" that they will be forfeited from benefitting under the estate. During the life of the litigation, the Mississippi Supreme Court declared forfeiture provisions like this unenforceable as a matter of law. *See Parker v. Benoist*, 160 So. 3d 198, 205 (¶15) (Miss. 2015). The Court held that "[a] strict interpretation of no-contest provisions in wills would hamper courts' goal of determining what is, once and for all, the will of the testator," and that "[a] bona fide inquiry into the validity of the will should not be defeated by language contained in the will itself." *Id*. at 206. As a result, if a will contained a forfeiture provision, it also had to have a requirement that it would only be enforced if it had a good faith exception. *Id*.

¶11.    Rosemary's will contained the exact same forfeiture provision that the Supreme Court held unenforceable in *Parker*. *Id*. at 203 (¶9). As a result, the chancery court found that "as a matter of law the [forfeiture] clause in this case is unenforceable because it fails to contain a good faith exception." This does not delete the forfeiture provision but instead reforms it to include an exception for good faith actions by beneficiaries. *Id*. at 205-06 (¶¶12-15).

¶12.    The first question we must resolve is whether the forfeiture clause even applies to Rosemary. Her argument on appeal is that it cannot be applied since she did not contest the will per se but instead only submitted the second codicil for probate. However, the plain language of Joan's will captures more conduct than simply contesting the will. The forfeiture clause applies when any beneficiary tries to "prevent any provision [of the will] from being carried out in accordance with its terms . . . ." The second codicil Rosemary submitted to probate dramatically changed the amounts her siblings would take under their mother's will

5

(among other significant changes). Under the express language of the forfeiture provision in Joan's will and the specific nature of the second codicil, we find that the forfeiture provision is applicable to Rosemary.

¶13. This does not end the inquiry, as we must determine whether Rosemary acted in good faith in submitting the second codicil for probate. In *Parker*, our Supreme Court noted that the evidence was sufficient for it to determine good faith and probable cause, rather than remand for the chancery court to conduct an inquiry. *Id.* at 206-07 (¶16). Likewise, we will determine if sufficient evidence supports Rosemary's claim that she submitted the second codicil in good faith and based on probable cause. In the context of a will contest, "[p]robable cause exists when, at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful." *Id.* at 206 (¶15) (quoting Restatement (Third) of Property: Wills and Other Donative Transfers § 8.5 cmt. c. (2003)). "The determination of good faith and probable cause should be inferred from the totality of the circumstances." *Id*.

¶14. Even though the chancery court amended its orders finding that Rosemary acted in good faith, we can affirm a chancery court's judgment for different reasons. *See Sanderson Farms Inc. v. Gatlin*, 848 So. 2d 828, 843 (¶44) (Miss. 2003). Here, we find sufficient evidence existed that Rosemary acted in good faith when submitting the second codicil. Knox White, an attorney and Joan's brother-in-law, assisted Joan with the second codicil. Knox died prior to trial, but his subscribing-witness affidavit was admitted into evidence

6

during trial. In the affidavit, Knox stated that he drafted the codicil based upon Joan's precise instructions. Knox said he "personally received Joan's instructions or directions for the preparation of the second codicil." He reviewed the codicil and then presented it to Joan. Joan then signed the second codicil in front of Knox and Shirley Carty, the other subscribing witness.

¶15. Knox's wife, Patti, was also present. Although Rosemary and other family members were present before Joan signed the second codicil, Rosemary was not present when Joan actually signed it or when Joan discussed its contents with Knox. Patti testified that she heard Joan tell Knox what she wanted the second codicil to include. Patti and Knox's daughter, Janet, was also present. Janet testified that she took notes during Knox and Joan's discussion about the second codicil. Janet typed the document, and then Knox and Joan reviewed it. When Knox left the room after Joan signed the second codicil, he saw Rosemary and told her, "This is your mama's codicil. Put it in a safe place."

¶16. Ralph Yelverton, an attorney who drafted Joan's prior wills and the first codicil, testified that he was aware of the second codicil. Yelverton testified that he submitted Joan's will and the first codicil for probate but not the second codicil because it lacked the signatures of two subscribing witnesses. He told Rosemary to obtain the affidavits from Knox and Carty in order to submit the second codicil for probate. Yelverton also "informed the chancellor at the time that I opened the estate that there may be another codicil out there." So the existence of the second codicil was not a secret, and Rosemary obtained the required

affidavits in order to submit the second codicil for probate.[1]

¶17. Even though the jury found the second codicil invalid, this decision alone does not mean that it was submitted in bad faith or without probable cause. Indeed, the jury could not ever reach this question, because its sole duty under the law was to determine "whether or not the writing propounded be the will of the alleged testator." *See* Miss. Code Ann. § 91-7-19 (Rev. 2018); *In re Estate of Taylor*, 755 So. 2d 1284, 1288 (¶16) (Miss. Ct. App. 2000) ("In a will contest, and accordingly, in an appeal as to such, there is only one main issue that is to be discussed and decided: devisavit vel non [or] will or no will. This is the issue of whether or not the will written by the testator is a valid will.")

¶18. In light of the above, we find that there was sufficient evidence to "lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful." *Parker*, 160 So. 3d at 209 (¶24). Therefore, we affirm that Rosemary will not forfeit her share of her mother's estate.

## II. Remand is not required.

¶19. As explained above, in the unique occasions when a jury is brought into the chancery court, its duty under the law is to ascertain "whether or not the writing propounded be the will of the alleged testator." *See* § 91-7-19. Christopher argues that if we do not enforce the forfeiture of Rosemary's inheritance, then we should remand for a jury to determine whether she exhibited good faith in probating the second codicil. We decline. This issue is not

---

[1] Indeed, during oral argument, counsel for Rosemary theorized that she was actually required to submit the second codicil for probate, since purposefully altering, destroying, or concealing a will or codicil after notification of the testator's death is a crime. Miss. Code Ann. § 97-9-77 (Rev. 2014).

within the jury's province under the statute.

¶20.   Christopher also contends that the chancery court erred in refusing to submit interrogatories to the jury that deliberated on the validity of the second codicil.  Christopher states that these interrogatories "would have enabled the jury to make specific findings of fact that were pertinent to a will contest," especially the forfeiture provision.  As set out above, this is not the proper role of the jury in will contests.  Joan had serious health problems during the last year of her life, and her competency to sign the second codicil was a core focus of the trial, which is proper under state law.  The jury was instructed on the issues of testamentary capacity and undue influence, as it should have been.  The jury's only role was to determine whether the codicil was valid and not whether Rosemary exhibited good faith in submitting it.  As we have already determined, the forfeiture provision was enforceable, but Rosemary acted in good faith when submitting the second codicil to probate. Accordingly, we find this issue is without merit.

### III.   The chancery court properly applied equity to the Jaguar.

¶21.   The chancery court allowed Rosemary to continue driving a Jaguar that belonged to her mother.  Christopher contends that the chancery court failed to honor Joan's express intent to bequeath all of her cars to her four children equally.  Early in the litigation, the chancery court ruled that the car was an asset of Joan's estate.  The chancery court allowed Rosemary to retain possession of the car while the case was pending, provided that when Joan's estate was settled, the value of the car at the date of distribution of Joan's estate would

9

be deducted from Rosemary's share.[2]  In its order closing Joan's estate, the chancery court awarded Rosemary the car but stated that if Christopher was successful on appeal, then Rosemary would have to surrender the car immediately.

¶22.    "The expressed intent of the testator is the guiding star rather than 'what he wished' or may have wished." *Stovall v. Stovall*, 360 So. 2d 679, 681 (Miss. 1978).  Joan determined the various cars in her possession at the time of her death were to be divided "equally" among her children.  However, by its very nature this expressed intent would have likely required the sale of the cars and the proceeds to be divided.  The powers of the chancery court "are as broad as equity and justice require." *Hall v. Wallace*, 443 So. 2d 834, 842 (Miss. 1983).   The chancery court fashioned equitable relief, and under the circumstances, it was not error to allow Rosemary to keep the car in exchange for a reduction in her share of her mother's estate.

### IV.    Intervention was proper.

¶23.    In his final issue, Christopher argues that the chancery court erred in granting a motion to intervene by Rosemary's first attorneys.  Rosemary's first attorneys, Donald Dornan and Edward Donovan (collectively Dornan), ceased representing her in 2012.  To recover attorney's fees, Dornan accepted an assignment by Rosemary of part of her distribution from Joan's estate equaling the amount of Dornan's legal fees and expenses.  Dornan then filed a motion to intervene under Mississippi Rule of Civil Procedure 24(a) and (b).  After a hearing, the chancery court allowed Dornan to intervene under Rule 24(a), intervention of

---

[2] The chancery court noted that Rosemary should be credited for the $5,000 she had already paid to Joan for the car.

10

right.

¶24. We review the chancery court's decision to allow a Rule 24(a) intervention de novo. *Madison HMA Inc. v. St. Dominic-Jackson Mem. Hosp.*, 35 So. 3d 1209, 1215 (¶19) (Miss. 2010). Rule 24(a)(2) provides that a party may be permitted to intervene as of right:

> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

¶25. To succeed, Dornan must show that: (1) he made a "timely application," (2) he had "an interest in the subject matter of the action," (3) he was "so situated that disposition of the action may as a practical matter impair or impede his ability to protect his interest," and (4) "his interest [was] not already . . . adequately represented by existing parties." *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 381 (Miss. 1987).

¶26. In *Madison HMA*, the Supreme Court noted that Mississippi has adopted a four-part test for determining whether a motion to intervene was timely, but did not specifically apply the test since the timeliness of the motion to intervene was "not in serious dispute." 35 So. 3d at 1217 (¶26); *see Guar. Nat'l Ins. Co.*, 501 So. 2d at 381-82. Such is the case here—the timeliness is not in serious dispute. Once Dornan and Rosemary found it necessary to end their attorney-client relationship, Dornan filed his motion to withdraw as Rosemary's attorney and his motion to intervene at the same time.

¶27. Further, Dornan demonstrated he had more than a mere economic interest in the subject matter. *Perry County v. Ferguson*, 618 So. 2d 1270, 1272 (Miss. 1993) ("Economic

11

interest alone is insufficient; a legally protected interest is required for intervention."). Rosemary assigned part of her distribution from Joan's estate to Dornan thereby giving Dornan an interest in the subject of the action.

¶28. Dornan has also shown that disposition of the action could impede the ability to protect his interest. If Rosemary was excluded from inheriting from Joan, then the portion she assigned to Dornan would no longer be available as a means to recover his attorney's fees.

¶29. Finally, Dornan has demonstrated that his interest was not adequately represented by Rosemary's new attorney. There was testimony during the motion hearing that although Rosemary did not object to Dornan's motion to intervene, she reserved the right to contest the amount of attorney's fees owed to Dornan.

¶30. Our Supreme Court has reiterated that the requirements of Rule 24(a)(2) "are not bright lines, but ranges—not all 'interests' are of equal rank. . . ." *Madison HMA Inc.*, 35 So. 3d at 1215 (¶19). It was not error to grant the attorneys' request to intervene.

¶31. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. BARNES, C.J., AND J. WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., NOT PARTICIPATING.**